## RALPH EMERSON

*v.*

## THE WESTERN UNION RAILROAD COMPANY.

1. CHANCERY PRACTICE — *objection to jurisdiction, how taken.* In chancery, an objection on the ground of want of jurisdiction, if apparent upon the face of the bill, may be taken by demurrer; if not, by plea. In this State, the objection, if apparent on the face of the bill, may be taken by motion to dismiss. In such case, the motion, like a demurrer, admits all facts well pleaded.

2. ADMISSION — *by the pleadings, effect of motion to quash.* On petition for the appointment of commissioners to assess damages in a proceeding to acquire a right of way, the filing of a written protest by a land owner sought to be affected, and basing a motion thereon to quash the proceeding for want of jurisdiction, like a demurrer, admits all the facts in the petition which are well pleaded.

3. REAL ESTATE — *right of owner to improvements put on it by others.* It seems, if a stranger builds upon the land of another, supposing it to be his own, and the owner of the land remains willfully passive, equity will not allow him to profit by the mistake; but if the stranger knows that the land upon which he is building does not belong to him, then the owner of the land may assert his legal rights and take the benefit of the expenditure.

4. SAME — *right of land owner on condemnation for right of way to claim for road structure previously made.* Where it was alleged in a petition for the appointment of commissioners to condemn land for right of way, that a railroad had been previously constructed on the same land sought to be taken, with the owner's consent, which was not denied in the pleadings, it was held that in the assessment of damages the land owner was not entitled to the value of the road structure as a part of his land.

5. RIGHT OF WAY — *governed by law under which the proceeding is commenced.* Where land was taken by the exercise of the right of eminent domain, and the proceeding commenced to have compensation ascertained before the act of 1872, on that subject, went into effect: *Held,* that the compensation should be ascertained under the laws in force at the time the proceedings were begun.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was a proceeding instituted by the appellee against the

appellant to have compensation ascertained for real estate previously taken as a right of way. The facts of the case are stated in the opinion.

Mr. WILLIAM LATHROP, for the appellant.

Mr. JAMES M. WRIGHT, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

We are of the opinion that appellee's counsel has demonstrated, by reference to public laws, that appellee, at the time of commencing this proceeding, was authorized to exercise the right of eminent domain. Besides, the petition contains an allegation of such authority as required by the statute, and after filing the petition, but before the appointment of commissioners, appellant appeared, filed a written protest as ground for a motion to quash the proceedings for want of jurisdiction apparent upon the face of the petition. The latter was under the act of 1852, and filed with the clerk of the circuit court November 27, 1871. On said protest a motion was made, at the January term, 1872, to quash the proceedings, which was overruled, and appellant taking no steps to raise any issues upon the petition by answer traversing any of its allegations, commissioners were appointed.

In chancery, an objection on the ground of jurisdiction, if apparent upon the face of the bill, may be taken by demurrer; if not, by plea. In this State, the objection, if apparent on the face of the bill, may be taken by motion to dismiss. In such cases the motion is regarded as having the same effect as a demurrer, and admits all facts well pleaded. We cannot, consistently with the analogies of rules of practice, regard the effect of the motion based upon the protest against the jurisdiction, otherwise than as admitting all facts in the petition well pleaded, because it was in the nature of a demurrer.

The commissioners appointed made a report July 15, 1872, assessing appellant's damages. The new law in reference to the exercise of the right of eminent domain went into force

July 1, 1872.   Appellant, however, after the report of commissioners, took an appeal therefrom to the circuit court, pursuant to the statute of 1852, and then, at the October term, 1872, of the court, made a motion that the proceedings be dismissed, on the ground that the act of 1852, under which they were begun, was repealed when the eminent domain statute of 1872 went into effect, July 1 of that year.   This motion was over ruled by the court, a jury empanneled, and appellant's damages assessed.   The same motion was then renewed, overruled, and the same ground is here urged as error.   We shall enter into no discussion of the provisions of the different statutes, because it is a sufficient answer to counsel's position that the circuit court had jurisdiction of the subject matter, and as the proceedings there would be the same under either statute, the appeal taken by himself conferred jurisdiction of the person.

It appears that, at the time this proceeding was commenced, there was a railroad track already laid upon the lands of appellant sought to be condemned, which had been constructed some fifteen years previously by the Racine & Mississippi R. R. Co., put into use as part of a line of railway by that company, and by it and the appellee, the successor of that company, operated ever since.

On the hearing, appellant insisted that the road having been placed on his land without condemnation and compensation, the materials thereof were *prima facie* a part of the realty, and he was entitled to their value as part of the damages for taking the land.   There was no evidence by either party directly affecting the question; but the petition alleged the construction of the road without compensation, with the permission and consent of the owner.   If that were true, appellant could not be allowed the value of the road as a part of his realty.   The question as to the effect of mere silence on the part of the owner, having knowledge, or, in other words, implied consent, is not involved.   In the case of *Ramsden* v. *Dyson*, 12 Jur. N. S. 506, the doctrine of implied assent was held subject to this qualification: "If a stranger builds upon

the land of A, supposing it to be his own, and A remains wilfully passive, equity will not allow him to profit by the mistake; but if the stranger knows that the land upon which he is building belongs to A, then A may assert his legal rights, and take the benefit of the expenditure." This is a very reasonable qualification; but whether any distinction should be made where the expenditure is for a public use, we do not at present decide, because the question now arises in a different aspect. The petition alleges express consent. If defendant intended to controvert that allegation, then, for reasons which always govern in pleading, to prevent surprise upon the plaintiff, and enable him to meet the defendant upon equal terms in respect to the evidence, the defendant should, in some unequivocal way, have given plaintiff notice of a denial of that allegation. Not having done so, but resting on his protest and motion to quash for want of jurisdiction, the allegation, for the purposes of the hearing, should be regarded as admitted. Hence there was no error in the ruling of the court against appellant's claim to have the value of the road allowed him.

Section five of the act of 1852 provides, " that in estimating the damages sustained by reason of the construction of the work specified in the petition, the commissioners shall take into consideration and estimate the benefits and advantages to the parties resulting from the construction and use of the road, etc., or other improvement: Provided, the said commissioners shall not estimate any benefits or advantages which may accrue to lands affected in common with adjoining lands on which such road, etc., does not pass."

On the hearing of this case before the jury, appellant's counsel asked the court to give the following instruction:

" That in assessing the damages to the land of the defendant, affected, but not taken by the railroad, the true measure is the difference (if any) between the market value of such land, with the road as it is, and what such market value would have been if the railroad had not been built across the lands so affected; and that without estimating any benefits or advan-

tages, real or supposed, to such tracts, by reason of the construction of such railroad."

The court refused it as asked, but, adding the following modification, gave it :

" This is so as to compensation for the land actually taken by the railroad company, but in assessing damages to the adjoining land, caused by the construction, location, operation and use of said railroad across said lands, the jury should offset against said damages, any special benefits (if they believe from the evidence any special benefits have been proved) to said lands or any tract thereof, over and above what other parties derive from said railroad who own land in the vicinity thereof, but whose lands are not crossed by said railroad."

It is insisted that by the provisions of the 9th section of the eminent domain act, which went into force July 1, 1872, no benefits could be taken into consideration.

Without undertaking to give any construction of the section just mentioned, we think that the land in question having been taken by the exercise of the right of eminent domain, and the proceedings commenced to have compensation ascertained before the act of 1872, such compensation should be ascertained under the laws in force at the time the proceedings were begun.

Finding no substantial error in the record, the judgment of the court below will be affirmed.

*Judgment affirmed.*