# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CHICAGO, PEORIA AND ST. LOUIS RAILWAY COMPANY

*v.*

JAMES ALDRICH.

*Filed at Mt. Vernon June 13, 1890.*

1. EMINENT DOMAIN—*jurors in condemnation proceedings—right of challenge in vacation—and of the grounds of challenge—presumption.* The statute gives the parties to a proceeding to condemn land in vacation, the same right of challenge of jurors as in other civil cases in the circuit court. Under this statute, a ground of challenge in a civil case in a court of record is good in a condemnation proceeding.

2. It is a sufficient cause of challenge that a juror called, if not a member of the regular panel, has served as a juror in the trial of any cause in any court of record in the county within one year previous to being called.

3. Where the court sustains a challenge to a juror on the ground of his service on a jury in a court of record within a year previous to his being called, it will, in favor of the ruling, be presumed that he was not a member of the regular panel, but a juror to whom the cause of challenge would apply.

4. In a case where the bill of exceptions does not purport to contain all the evidence heard as to the qualification of jurors, and a general challenge is allowed, not specifically limited to the particular ground disclosed by the bill of exceptions, it will be presumed, if the particular ground is not shown, the challenge was sustained on other grounds.

5. Same—*jury fees—whether taxable against the county.* In a proceeding to condemn land, and after judgment, the petitioner entered a motion to strike the jury fees from the fee book, for the reason that the county should pay such fees, which motion was overruled. There was nothing in the record to show that such fees were charged to the petitioner, or that any judgment for costs was rendered against it: *Held,* that no assignment of errors could be entertained on the record.

6. Same—*measure of damages—as to land not taken—what elements to be considered—of benefits.* In estimating the damage to that part of a farm not taken for a railway track and right of way, the jury may take into consideration such incidental injury as will result from the perpetual use of the track for moving trains, or from danger of killing stock or injury to pasturing stock, and the danger of the escape of fire, and such other damages as are reasonably probable to ensue from the construction and operation of the proposed railroad.

7. It is proper for the jury to consider whether the land owner's stock will be liable to be killed, and his farm injured, or his fences and buildings destroyed by fire. If there is a liability to such injury, its tendency is to depreciate the value of the farm and its use, as well as in the market; and such liability to injury may be regarded as proximate damages, as much as the danger and inconvenience of crossing the road from one part of the farm to another.

8. In estimating the damages to land not taken, the jury should not consider any general benefits which the railroad may occasion in making a better market, or by affording conveniences for travel. They should not take into consideration such benefits as the land owner will enjoy in common with the owners of other lands through which the road runs, but only such as result to him over and above such common benefits.

9. In a proceeding for the condemnation of a right of way for a railroad, and the assessment of damages to the part of the land not taken, the court instructed the jury, that in estimating the damages to the land not taken, they should consider the railroad as running only through the defendant's farm, and should not consider any general benefits which the road might occasion by making a better market, or by affording conveniences for travel, etc.: *Held,* that there was no error in the instruction.

10. Same—*practice—limiting number of witnesses.* Even if the court, in a condemnation proceeding, has the power, in its discretion, to limit the number of witnesses who shall be examined, or to limit the number of witnesses whose fees and costs shall be taxed against the petitioner, it can not be said that the failure to exercise that discretion is of itself an abuse of discretion which may be reviewed.

11. Three cases for the condemnation of land for a railroad right of way were tried together. After judgment, the petitioner moved the court to tax the fees and costs of all the defendants' witnesses in excess of six, against the defendants. It did not appear that more witnesses were examined than were fairly and reasonably necessary. Moreover, under such circumstances there is no rule of law which made it imperative upon the court to tax the fees and costs of any of the witnesses to the defendants.

12. Presumption—*in support of judgment.* On appeal or error, every reasonable intendment not negatived by the record, which goes to support the judgment, must prevail.

Appeal from the County Court of Madison county; the Hon. Cyrus L. Cook, Judge, presiding.

Messrs. Morrison & Whitlock, and Messrs. Dale & Bradshaw, for the appellant:

The challenged jurors were on the regular panel, and the challenge was not applicable, but applies only to jurors picked up to fill the panel. Rev. Stat. chap. 78, sec. 14.

The third instruction given for defendant was erroneous, and should have been refused. After calling the attention of the jury to the rule for estimating damages to lands not taken by reason of the location and construction of the road, with several other "elements," it proceeds: "The danger, if any, by fire from passing engines, or otherwise, and liability, if any, of having the stock running on said farm killed or injured by trains, together with any other damage naturally resulting from the construction of the road." This instruction is in conflict with the opinion rendered in *McReynolds* v. *Baltimore and Ohio Railroad Co.* 106 Ill. 152.

Damages from fire and the killing of stock are classed among the imaginary damages, and if any occur the road is liable. *Jones* v. *Railroad Co.* 68 Ill. 380; *Railroad Co.* v. *Brake,* 125 id. 396.

The fourth instruction is objectionable. It, in effect, tells the jury, that in considering the question of injury to the lands

of Aldrich not taken, they should consider this railroad as running only through "this farm." By this instruction the jury are directed, in effect, to consider this a railroad only running through the tract of land described, and with trains of cars running back and forth for all time, as the stereotyped expressions of the witnesses have it. It might have been well to instruct the jury that they were not authorized by law to deduct anything from the damages to contiguous lands for benefits that were common to others; but was it right to include in it this expression?

As to the right to limit the witnesses or the costs of the witnesses, see Rev. Stat. chap. 33, sec. 15; *White* v. *Herman,* 51 Ill. 243.

It was error to tax the jury fees against petitioner. Rev. Stat. chap. 78, sec. 44.

Messrs. Happy & Travous, for the appellee:

The jury in this case, instead of being of the regular panel, was a special jury called for a special purpose.

Appellee's third instruction is based on the ruling of this court, and is in accord with it. *Railroad Co.* v. *Bowman,* 122 Ill. 595; *Railroad Co.* v. *Brake,* 125 id. 395.

There was no error in refusing to limit the witnesses, or refusing the motion to tax the jury fees to the county.

Mr. Justice Bailey delivered the opinion of the Court:

This was a petition under the Eminent Domain Law, brought by the Chicago, Peoria and St. Louis Railway Company against James Aldrich and two others, to condemn a right of way, one hundred feet in width, over lands belonging to the defendants. The petition was presented to the judge of the County Court of Madison county and the proceedings thereon were had in vacation. Defendant Aldrich filed a cross-petition claiming and praying for an assessment of damages

to that portion of his land not taken for said right of way. By consent of the parties, the trial was had as to the several tracts of land of the three defendants at the same time and before the same jury, and the jury having been empannelled and sworn, and having heard the evidence adduced by the respective parties, and having made personal examination of the premises in charge of the sheriff, rendered separate verdicts as to each tract of land. By their verdict in the case of defendant Aldrich the jury assessed as compensation for the land taken for right of way the sum of $116, and as damages to the contiguous land not taken the sum of $650, making $766 in all, and the court, after denying the petitioner's motion for a new trial, rendered judgment in accordance with the verdict. The petitioner now appeals to this court.

The first error assigned calls in question the decision of the court sustaining the defendant's challenge of James Stubbs and John Keinlen, two jurors who had been accepted by the petitioner.

It appears that said Stubbs, being called as a juror, and having testified on his examination that he resided at Edwardsville, was a freeholder, knew the defendant, and had no opinion about the merits of the case, he was accepted by the petitioner as a juror. The defendant's counsel then asked him if he had served on a jury in a court of record within one year, and he replied that he had served on one jury in an insane case in the County Court within a year, but on no other jury, and thereupon the defendant challenged said juror for cause, and said challenge was sustained by the court.

Said Keinlen also having answered that he was a freeholder and resided at Edwardsville; that he knew the defendant but had no opinion about the merits of the case, was accepted by the petitioner. Said juror being then asked whether he had served as a juror in a court of record within a year, answered that he had served on a jury in the Circuit Court one week as a picked up juror, and he was also challenged by the de-.

fendant for cause, and said challenge was in like manner sustained.

Although the mode of selecting the panel of jurors for service in condemnation cases, where such cases are fixed for hearing in vacation, is essentially different from that by which jurors are selected for service in the Circuit Court, the seventh section of the Eminent Domain Act gives to all parties in interest "the same right of challenge of jurors as in other civil cases in the Circuit Courts." This provision would seem to render the same grounds of challenge which the law gives in ordinary civil cases available in the trial of condemnation suits; and by the fourteenth section of the statute in relation to jurors, it is made a sufficient cause of challenge that the juror called, if not a member of the regular panel, has served as a juror in the trial of a cause in any court of record in the county within one year previous to being offered as a juror.

In this case it does not appear from the bill of exceptions whether the jurors to whom the challenge was sustained were members of the regular panel or not. On that point the record is silent. It will therefore be presumed, in support of the judgment of the court below, that they were not members of the regular panel, but were jurors to whom the particular cause of challenge shown would apply.

Furthermore, the bill of exceptions does not purport to contain all the evidence heard by the court in relation to the qualifications of said jurors, and the challenge for cause being general, and not specifically limited to the particular ground disclosed by the bill of exceptions, we can not say that other grounds of challenge may not have been shown sufficient to warrant the rejection of said jurors. Every reasonable intendment not negatived by the record, which goes to support the judgment, must prevail, and as the contrary is not shown, we must presume that all facts necessary to justify the court in sustaining the challenges were proved.

Complaint is made of the third instruction given to the jury at the instance of defendant Aldrich. That instruction held, that the jury, in estimating the damages to that part of said defendant's farm not taken by the petitioner for right of way, should consider as elements of damage, among various other things, "the danger, if any, by fire from passing engines or otherwise, and liability, if any, of having the stock running on said farm killed or injured by trains, together with any other damage naturally resulting from the construction of said railroad." It is urged that the elements of damage here specifically named are too remote and speculative, and should not therefore have been submitted to the jury.

So far at least as these objections are concerned, the instruction is fully justified by repeated decisions of this court. Thus, in *C., B. & N. R. R. Co.* v. *Bowman,* 122 Ill. 595, we held that the jury, in estimating the damages to the land not taken would be justified in considering "such incidental injury as would result from the perpetual use of the track for moving trains, or from danger of killing stock, or injury to pasturing stock, or escape of fire, and generally for such damages as are reasonably probable to ensue from the construction and operation of the proposed road." In *St. L. & S. E. Ry. Co.* v. *Teters,* 68 Ill. 144, we said: "The design of the law is, to fully compensate a party for all injury he may sustain by reason of the appropriation of his land for the use of the road, and which shall grow out of or be occasioned by its location and use at that place. This being true, it follows that it is proper for the jury to consider whether his stock would be liable to be killed and his farm injured, or his fences and buildings destroyed by fire, and the amount of damage he would thus sustain. If there was a liability to such injury, its tendency would be to depreciate the value of the farm in its use, as well as in the market; and if so, such would be proximate damage, as much as the danger and inconvenience of crossing the road from one part of the farm to another." See also,

*R., R. I. & St. L. R. R. Co.* v. *McKinley,* 64 Ill. 338; *McRey-nolds* v. *B. & O. R. Ry. Co.* 106 id. 152; *C. & I. R. R. Co.* v. *Hopkins,* 90 id. 316; Lewis on Eminent Domain, sec. 497, and authorities cited in notes.

Objection is also made to the defendant's fifth instruction which told the jury that, in estimating the damages to the defendant's land not taken, they should consider the railroad as running only through his farm, and should not consider any general benefits which the road might occasion by making a better market, or by affording conveniences for travel; that it would not be proper for the jury to take into consideration such benefits as the defendant might enjoy in common with the owners of other lands through which the road might run, but only such as would result to the defendant over and above such common benefits.

The rule laid down by this instruction that general benefits which the defendant will enjoy in common with other landowners, or with the public, should not be taken into account is not questioned, but fault is found with the direction to the jury to consider the railroad as though it only ran through the defendant's farm. We can not see how this direction, when taken in connection with the residue of the instruction and the proposition of law intended to be stated and illustrated, could have been in any degree prejudicial to the railroad company. So long as the benefits which the defendant will share with the public were to be excluded, it was by no means illogical to view the railroad, so far as the question of damages to the defendant's farm was concerned, as a structure local and limited to said farm. The general benefits arising from the construction and operation of the road, and which the defendant will share in common with others, will grow out of the fact that the road is not limited in its extent to one locality, but is to connect and form a commercial highway between points distant from each other. The instruction to the jury to consider the road only as running through the defendant's farm

was manifestly given for the purpose of eliminating from their minds all consideration of those general or commercial advantages which will flow to the public from the construction of the road, but which should in no way influence the assessment of damages. The suggestion that the jury were likely to be misled into the supposition that they were to assess damages upon the theory that engines and trains of cars were to be continually passing to and fro over said farm is far-fetched and improbable.

The petitioner, after judgment had been rendered, entered his motion to tax the fees and costs of all the defendant's witnesses in excess of six, against the defendant, claiming that, during the trial, and after the defendant had produced and examined six witnesses, it notified the defendant, in the presence of the court, that at the proper time it would make such motion. We fail to find any evidence in the record that such notice was given, nor does it seem to us to be of any importance whether it was given or not. Even if it should be conceded that the court had the power, in its discretion, to limit the number of witnesses who should be examined, or to limit the number of witnesses whose fees and costs should be taxed against the railroad company, it can not be said, at least under the circumstances of this case, that its failure to exercise such discretion was of itself an abuse of discretion. It should be remembered that three cases were being tried together, and it seems that only fifteen witnesses were produced and examined on the part of the defendants. We can not say that more were examined than were fairly and reasonably necessary, and under these circumstances there is no rule of law known to us which made it imperative upon the court to tax the fees and costs of any of these witnesses to the defendants.

After the entry of judgment, the petitioner moved the court, "to strike the jury fees in this proceeding from the fee book as entered by the clerk of this court, for the reason that Madi-

son county should pay said fees, and that the petitioner is not
legally liable for the same." This motion was overruled, and
the decision of the court overruling the same is assigned for
error.

There is nothing in the present record which makes it nec-
essary for us to determine whether the jurors' fees should have
been taxed against the petitioner or against the county. There
is nothing in the record showing that they were in fact taxed
against the petitioner, and accordingly, so far as appears, the
petitioner has no ground of complaint. The fee bill is not in
the record, nor does it even appear that any judgment for
costs was rendered against the petitioner or any one else. The
judgment merely orders that the petitioner pay to the defend-
ant the amount of the damages awarded by the jury, and pro-
vides that, upon payment of that sum, it may enter upon the
right of way condemned, but, so far as we are able to see, no
disposition whatever is made of the question of costs. All
there is in the record on that subject is the petitioner's motion
and the decision of the court overruling it, but it can not be
inferred from those documents that the court taxed against the
petitioner either the jurors' fees or any other item of costs.
So far as appears, the motion to re-tax may have been denied
for the plainly sufficient reason that no costs had been taxed
against the petitioner. It is clear therefore that the last men-
tioned assignment of error can not be sustained.

As we are able to find no error in the record the judgment
of the County Court will be affirmed.

*Judgment affirmed.*