THE METROPOLITAN WEST SIDE ELEVATED RAILWAY COMPANY

*v.*

JOSEPH A. STICKNEY *et al.*

362:35 LRA 8

*Filed at Springfield June 18, 1894.*

1. SPECIAL ASSESSMENTS—*special benefits.* If property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it is specially benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may, to a greater or less degree, be likewise specially benefited. In other words, it is not such benefits as are special to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but it is such benefits as that the particular property is by the improvement enhanced in value,—that is, specially benefited,—that are to be considered.

2. EMINENT DOMAIN—*set-off of benefits against damages to property not taken.* In a condemnation proceeding the court instructed the jury, that though they believe, from the evidence, that some of the property of some of the respondents "will actually be benefited by reason of the construction and operation of the petitioner's railroad, yet if the jury further believe, from the evidence, that such benefits are not special to the respondents' property, and are shared by it in common with the generality of property in the vicinity of the line of said proposed railroad, then such benefits are not to be considered in determining whether or not the property of said respondents not taken will be damaged by reason of taking a part of their property and operating and maintaining the petitioner's railroad:" *Held,* that the instruction did not announce a correct rule of law, and was erroneous.

3. If a piece of property is enhanced in value, its enhancement, or, in other words, benefits to the property, can not be said to be common to any other piece of property specially enhanced in value, and it is thus specially benefited within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties.

4. It follows that where the benefits are designated as "general benefits," "benefits common to other property," and the like expressions to be found in the decided cases, it is meant those general, intangible benefits which are supposed to flow to the general public from a public improvement. Thus, the paving of a street in a city may confer special benefits upon properties near it by an increase in their value, and at the same time, by the convenience afforded the general public, confer a general benefit.

5. So a railroad built through a town or through the country may be a general benefit by affording additional facilities for travel and commerce, and thereby be of benefit to the community at large; but the effect of such general benefits upon any particular piece of property would be impossible of ascertainment, and speculative, and it has always been held that such benefits are not to be considered for that reason.

6. SAME—*measure of damages to land not taken.* The measure of damages to property not taken is the difference in value of the land before the proposed construction, and what it will be afterward. Hence, the effects flowing from the proposed work upon the particular property are to be considered, and if the value of the land not taken, considered as a whole tract, or separately, is equal to its value before the improvement, there is no damage to property not taken.

7. The damage contemplated by the constitution is an actual diminution of the present value or price caused by the construction of the road, or a physical injury to the property that renders it less valuable in the market if offered for sale. The test of whether damages have accrued to the land not taken, is, whether there has been a diminution in the market value of the land by reason of the proposed improvement. The effect upon the whole tract remaining after part is taken must be considered.

8. The consideration of benefits by which the land not taken is increased instead of being diminished in value, is not the deduction of benefits or advantages from the damages, but it is ascertaining whether there *is damage* or not. It is but the estimation of damages, and seems to be the only fair and just mode of estimating them.

9. If the property is worth as much after an improvement as before, then there is no damage done the same. If the benefits received from the making of the improvement are equal to or greater than the loss, then the property is not damaged for public use. There can be no damage to property without pecuniary loss. If there is no depreciation in value there is no damage.

10. The damages to property not taken must be real, and not speculative, and it must depreciate the price, or its use; and the depreciation is to be determined by comparing its value before and after the structure is made which produces the injury. Any benefits thus conferred should be considered, as well as injury inflicted by the structure, in estimating the damages.

11. Special benefits are such benefits flowing from the proposed public work as appreciably enhance the value of the particular tract of land alleged to be benefited. On the one hand, the damages must be real and substantial; on the other, the benefits must be such as affect the market value or use of the land, and such as are capable of

measurement and computation.    Hence, all imaginary and merely speculative damages or benefits are excluded from consideration.

12.    The consideration of such benefits as tend specifically to enhance the value of the particular property is not setting off benefits against the damages to the property, but is the simple ascertainment of whether the land has been depreciated in price or worth,—that is, whether loss or damage has resulted to the owner.    The fact that other property in the vicinity is likewise increased in value from the same cause, furnishes no reason for excluding the consideration of special benefits to the particular property in determining whether it has been damaged or not.

13.    There can be no damage to property without pecuniary loss, or injury which lessens its value.    It therefore follows that every element arising from the construction and operation of the railroad, or other public improvement, which, in an appreciable degree, capable of ascertainment in dollars and cents, enters into the diminution or increase of the value of the particular property, is proper to be taken into consideration in determining whether there has been damage, and the extent of it.

14.    The situation of the property, the use to which it is devoted and of which it is susceptible, the character and extent of the business to which it is adapted before and after the construction of the public work, and, indeed, every fact and circumstance legitimately tending to show a depreciation or increase of the value of the property, are proper to be considered, so far as they tend to show the actual value of the land with and without the proposed taking for the public use.

15.    ·On the other hand, a consideration of facts and circumstances tending to show those general benefits supposed to flow to the community at large, or to the public generally, from the construction of the proposed railroad or other public work, and the effect of which, in determining the injury or benefit to the particular tract of land, can not be other than conjectural or speculative, should be excluded.

16.    FORMER DECISIONS—*cases explained.*    In *St. Louis, Indianapolis and Springfield Railroad Co.* v. *Kirby*, 104 Ill. 347, an instruction was approved which excluded the consideration of any general benefit to the land occupied as a farm which a railroad might be in making a better market or convenience in travel.    By approving such instruction it was not intended by this court to exclude such benefits as would appreciate the market value of the particular tract of land.

17.    In *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152, the jury were instructed, that if by the construction of the railroad the land would be specially benefited to the extent, or greater than, they would be damaged, then the jury should only find a verdict for the compensation for the land actually taken, which the court approved:

*Held,* that the ruling was in harmony with the prior decisions of this court except the case of *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 Ill. 294.

18. In the *McReynolds case* this court used the words, "benefits common to other property," as designating those benefits which flow to the public generally, as distinguished from those which enhance the value of the specific property, without intending to exclude any elements arising from the improvement that tended to specifically enhance the value of the particular property.

19. In *Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163, the words in an instruction, "under the laws of this State no benefits or advantage which may accrue to lands or property in common with all other property along the line of the proposed railroad," by reason of its construction and operation, can lawfully be set off, etc., was understood to mean those benefits of a general nature which each tract of land or parcel of property along the line of the railway shared in common by reason of increased facilities for traffic and commerce, and the like, and which, while resulting in benefit to the community at large, are incapable of measurement when applied to a particular tract of land.

20. In *Harwood* v. *Bloomington,* 124 Ill. 48, this court held, that when the land owner interposes a claim for damages to that part of the land not taken, in consequence of the improvement, if the land not taken has received special benefits,—benefits not common to other property, —such benefits may be considered in arriving at the amount of damages the owner may have sustained to the property not taken. The court was not called upon to define what benefits were "common to other property," and did not attempt to do so. The sense, however, in which the words were used in the opinion, is clearly indicated in the cases therein cited.

21. The rule laid down in *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 Ill. 294, that the question of benefits can in no case be considered in estimating the value of land taken or in estimating the damages to land not taken, is not supported by any of the prior or subsequent cases.

22. INSTRUCTIONS—*requisites.* The jury have little to do with the theory and policy of the law, and instructions should be so drawn as to be a concise and accurate statement of the law as applicable to the facts of the particular case. If they call the attention of the jury, in an argumentative manner, to matters with which they have no immediate concern, there will be no error in their refusal.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

Mr. E. J. Harkness, and Mr. W. W. Gurley, for the appellant:

Where damages are claimed as to the part of the land not taken, the only question to be determined is, what will be the effect on the market value of the remaining part. If that effect is to decrease the market value, then the property is damaged, and the extent of the decrease in market value is the measure of the damage. If, on the contrary, the effect of the construction and operation of a railroad is to increase the market value of the remainder over what it would be without such railroad, then the property will not be damaged. *Railroad Co.* v. *Francis,* 70 Ill. 238; *Page* v. *Railway Co.* id. 324; *Eberhardt* v. *Railway Co.* id. 347; *Railroad Co.* v. *Stein,* 75 id. 41; *Elgin* v. *Eaton,* 83 id. 537; *Hyde Park* v. *Dunham,* 85 id. 569; *Railroad Co.* v. *Haller,* 82 id. 208; *Railway Co.* v. *Hall,* 90 id. 42; *Rigney* v. *Chicago,* 102 id. 81; *Railroad Co.* v. *Bowman,* 122 id. 601; *Dupuis* v. *Railroad Co.* 115 id. 101; *Kiernan* v. *Railroad Co.* 123 id. 188; *Harwood* v. *Bloomington,* 124 id. 48; *Railroad Co.* v. *McDougall,* 126 id. 111; *Coal Co.* v. *Chicago,* 26 Fed. Rep. 415; *Atlanta* v. *Green,* 67 Ga. 86; *Atlanta* v. *Word,* 78 id. 270; *Springer* v. *Chicago,* 135 Ill. 552; *Railroad Co.* v. *Eaton,* 136 id. 9.

As to what are special benefits, as distinguished from general benefits, see *Chicago* v. *Larned,* 34 Ill. 203; *Rigney* v. *Chicago,* 102 id. 64; *Wilson* v. *Sanitary District,* 133 id. 443; *Bush* v. *Railway Co.* 13 N. Y. Supp. 908; *Bohm* v. *Railroad Co.* 129 N. Y. 576.

Mr. Elbert H. Gary, for the appellees, Mr. C. M. Walker for Stickney, Mr. George W. Stanford for Ilett, and Mr. T. H. Simmons for the Grant Manufacturing Company:

As to the right to deduct benefits from the damages to the part of the land not taken, see *Railroad Co.* v. *Black,* 58 Ill. 34; *Railroad Co.* v. *Kirby,* 104 id. 345; *Railroad Co.* v. *Blake,* 116 id. 163; *Railroad Co.* v. *Aldrich,* 134 id. 9; *Harwood* v.

*Bloomington,* 124 id. 48; *McReynolds* v. *Railroad Co.* 106 id. 152; *State* v. *Evans,* 2 Scam. 208; *Cemetery Ass.* v. *Railroad Co.* 121 Ill. 204; *Hyde Park* v. *Ice Co.* 117 id. 236; *Railroad Co.* v. *Henry,* 79 id. 294; *Upton* v. *Railroad Co.* 8 Cush. 600; *State* v. *Miller,* 23 N. Y. 385; *Allen* v. *Charleston,* 10 Mass. 246; *Railroad Co.* v. *Collett,* 6 Ohio St. 182; *Railroad Co.* v. *Fuller,* 63 Texas, 473; *Hornstein* v. *Railroad Co.* 51 Pa. St. 90; *Railroad Co.* v. *Waldrum,* 11 Minn. 236; *Commissioners* v. *O'Sullivan,* 17 Kan. 59; *Railroad Co.* v. *Tyree,* 7 W. Va. 699; *Robbins* v. *Railroad Co.* 6 Wis. 642; *Chapman* v. *Railroad Co.* 33 id. 639; *Laflin* v. *Railroad Co.* 33 Fed. Rep. 424; *Railroad Co.* v. *McDonald,* 12 Heisk. 56; *Hoscher* v. *Railroad Co.* 60 Mo. 304; *Railroad Co.* v. *Richardson,* 45 id. 468; *Freedle* v. *Railroad Co.* 39 N. C. 90; *Railroad Co.* v. *Wicker,* 74 id. 234; *Adden* v. *Railroad Co.* 55 N. H. 413; *Petition of Railroad Co.* 35 id. 147; *Railroad Co.* v. *Forman,* 24 W. Va. 672; *Railroad Co.* v. *Wiebe,* 25 Neb. 544; *Railroad Co.* v. *McDermott,* id. 718; *Railroad Co.* v. *Whalen,* 11 id. 590.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a proceeding instituted by the Metropolitan West Side Elevated Railway Company for condemnation of right of way across certain lots in the city of Chicago, owned by appellees in severalty,—the appellee the Grant Manufacturing Company having a leasehold interest in the property owned by appellee Stickney. A trial resulted in a verdict and judgment for damages to land taken, and for damages for the removal of buildings, and to the parts of the lots not taken, in severalty. Thus there is awarded the owners of the leasehold interest in lot 24, and the south six feet of lot 25, in Campbell's subdivision, etc., and "for costs of removal from said premises, and for damages by interruption to the business, and for the value of the improvements on said premises, and for damages to the leasehold interest in the remainder of said premises not taken, to-wit, the south one hundred and twenty-

five feet of lots 21, 22, 23, 24, 25 and 26, in said subdivision, the total sum of $5150;" and to the owner of the reversion, appellee Joseph A. Stickney, for his reversionary interest in the land taken, and for damages to the reversion in the south one hundred and twenty-five feet of lots 21, 22, 23, 24, 25 and 26, in said subdivision, except lot 24 and the south six feet of lot 25, and in full for damages to lots 19 and 20, and to that portion of lot 26 not included in said leasehold interest, and to lots 27 to 32, both inclusive, all in said subdivision, the gross sum of $15,983; and to the owner, appellee William Ilett, of the south thirty feet of the north sixty-seven feet of lots 1, 2 and 3, in block 2, Reed's subdivision, etc., as compensation for land taken, and for damages to the remaining portion of said premises, to-wit, said lots 1, 2 and 3, the gross sum of $16,465.

Numerous errors are assigned, but we shall find it necessary to consider only those questioning the correctness of the rulings of the court in giving and refusing instructions. No question is raised as to the correctness of the ruling of the court that as to the land taken for the proposed public improvement the owner was entitled to recover its full value for the purpose to which it was devoted or of which it was susceptible. The questions that we shall consider relate solely to the compensation to be awarded for damages to the part of the land or lots not taken.

By the eleventh and twelfth instructions given for respondents the jury were told:

11. "The jury are instructed, that if they find, from the evidence, that any of the respondents' property which is not taken will be damaged by reason of taking a part of their property and by the construction, maintenance and operation of the railroad, then the jury have no right to offset against such damages any benefits which may arise from the construction and operation of such railroad, unless the jury find, from the evidence, that such benefits are special to respondents,

property, and not shared by it in common with the generality of property in the vicinity of the line of said proposed railroad. Under the laws of this State no benefits or advantages which may accrue to the property not taken, in common with all other property along and near or in the vicinity of the line of the proposed railroad, by reason of the construction and operation of said railroad, can be lawfully set off or deducted from the damages, if any, to the property not taken.

· 12. "Even though the jury may believe, from the evidence, that some of the property of some of the respondents will be actually benefited by reason of the construction and operation of the petitioner's railroad, yet if the jury further believe, from the evidence, that such benefits are not special to the respondents' property, and are shared by it in common with the generality of property in the vicinity of the line of said proposed railroad, then such benefits are not to be considered in determining whether or not the property of said respondents not taken will be damaged by reason of taking a part of their property, and operating, constructing and maintaining the petitioner's railroad."

And the same was again said to the jury in the fourteenth, fifteenth, sixteenth and twenty-first, given on their behalf. The giving of these several instructions is assigned for error.

The misapprehension of counsel in drawing, and the court in giving, the instructions, consists in that they fail to draw the distinction between benefits that are special to the particular property not taken, and those benefits which, though not confined to the particular property, specially benefit it,—that is, specially add to its value. Property may be specially benefited by an improvement, and at the same time other property, upon the same improvement, be likewise specially benefited. This may be illustrated by the assessment of special benefits for a local improvement. Presumably all the property along the line of the improvement will be more or less specially benefited,—that is, benefited beyond the gen-

24—150 Ill.

eral benefit supposed to diffuse itself from the improvement throughout the municipality ordering the improvement made. If property is enhanced in value by reason of the improvement, as distinguished from the general benefits to the whole community at large, it is said to be specially benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may be, to a greater or less degree, likewise specially benefited. (*Wilson* v. *Board of Trustees*, 133 Ill. 443.) In other words, it is not such benefit as is special to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but is such benefits as that the particular property is by the improvement enhanced in value,—that is, specially benefited. Hence, the language of the twelfth instruction, "yet if the jury further believe, from the evidence, that such benefits are *not special to the respondents' property*, and are shared by it in common with the generality of property in the vicinity of the line of said proposed railroad, then such benefits are not to be considered," etc., does not announce a correct rule of law. So in the use of the words "and shared by it in common with the generality of the property," etc., there seems to be a confusion of ideas. If a piece of property is enhanced in value, such enhancement, —or, in other words, benefit to the property,—can not be said to be common to any other piece of property. Each piece of property especially enhanced in value is thus specially benefited within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties. It follows, necessarily, that where the benefits are designated as "general benefits," "benefits common to other property," and the like expressions to be found in decided cases, it is meant those general, intangible benefits which are supposed to flow to the general public from a public improvement. Thus, the paving of a street in a city may confer special benefits upon properties near it by an increase in their value, and at the

same time, by the convenience afforded the general public, confer a general benefit. So a railroad built through a town or through the country may be a general benefit, by affording additional facilities for travel and commerce, and thereby be of benefit to the community at large. But the effect of such general benefits upon any particular piece of property would be impossible of ascertainment, and speculative, and it has always been held that such benefits are not to be considered for that reason.

Keeping these distinctions in view in the further discussion, it will be found that the numerous cases in this State, perhaps with a single exception, are in line. While there is, perhaps, some confusion in the cases, it will be found that the measure of damages adopted in this State, as well as by the weight of authority elsewhere, is the difference in value of the property before the proposed construction and what it will be afterward. Hence, the effects flowing from the proposed work upon the particular property are to be considered, and if the value of the land not taken, considered as a part of the whole tract, or separately, is equal to its value before the improvement, there is no damage to property not taken. This will become apparent by a slight review of the law as announced in the various cases.

Under the Eminent Domain law of 1845, damages were not allowable where an additional value was given to the land from the proposed improvement, equal to the injury occasioned. In other words, the general benefits to the owner's property were allowed to be set off against the damages to his property by reason of the taking of a part thereof for the proposed improvement. Or, differently stated, in determining whether he was damaged, and the extent thereof, the general benefits to his property were to be considered. *Alton, etc. Railroad Co.* v. *Carpenter,* 14 Ill. 190 ; *Hayes* v. *Ottawa, etc. Railroad Co.* 54 id. 373 ; *Peoria, etc. Railway Co.* v. *Laurie,* 63 id. 264.

The act of 1852 provided for the appointment of commissioners, in condemnation proceedings, to fix compensation, etc. Section 5 of the act provided, that after being sworn, etc., the commissioners should proceed, without delay, upon view and inspection of the premises as well as upon hearing the allegations and proofs of the parties, to fix the compensation to be made to each party or owner of land to be taken, and also estimate and assess the damages sustained by any person or persons by reason of the construction and use of the work specified in the petition, taking into consideration and estimating the benefits and advantages to the parties resulting from the construction and use of the improvement: "*Provided,* that said commissioners shall not estimate any benefits or advantages which may accrue to lands affected in common with adjoining lands on which such road or canal or other work does not pass." Under this statute, as under the present, compensation was required to be made for the full value of the land taken, without regard to benefits to the remaining land not taken. In assessing damages, however, to the remaining land of the owner not taken, only special benefits to the land not taken, and not common to adjoining land through which the improvement passed, could be set off. *Hayes* v. *Ottawa, etc. Railway Co. supra; Peoria, etc. Railway Co.* v. *Black, supra; Emerson* v. *Western Union Railway Co.* 75 Ill. 176.

The constitution of 1848 provided only that land should not be taken for public use without just compensation. This was a limitation upon the exercise of the sovereign power of eminent domain. But the people, through their representatives, had the undoubted right of imposing further limitations upon its exercise, and sought by the act of 1852 to provide compensation for damages, by reason of the proposed improvement, other than those arising from the loss of the land actually taken, and placed an express limitation in fixing the damages, excluding benefits common to adjoining lands over or through which the improvement did not pass.

By the constitution of 1870 it was provided that land should not be taken *or damaged* for public use without just compensation, and the legislature, by the ninth section of the act of April 10, 1872, which, as said in *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 324, "is only for the carrying out of the provision of the constitution," after requiring the jury to go upon the premises, and from their view and the evidence heard make their report setting forth and showing the compensation ascertained to each person entitled thereto, provided "that no benefits or advantages which may accrue to land or property affected shall be set off against or deducted from such compensation in any case," thereby repealing the act of 1852.

After the adoption of the constitution of 1870, and prior to the passage of the act of 1872, now in force, the case of *Chicago and Pacific Railway Co.* v. *Francis,* 70 Ill. 238, arose, and was settled under the provision of the constitution before mentioned, and a construction was there placed upon the word "damaged," as used in the constitutional provision, and it was said: "We must presume that it was used in its ordinary and popular sense, which is, hurt, injury, or loss. Now, we can not suppose that the framers of that instrument intended it in any other sense than loss or depreciation in the price of the property damaged,—that the damage or injury should be real, and not imaginary or speculative. It can not be said appellee has sustained damage when his property is worth and will sell for as much as, or more than, if no road had been built. It is no damage to him if the construction of the railroad has not increased the value of his lots, whilst it has added thirty, forty or fifty per cent to the value of other property in the vicinity, but differently situated. He has no ownership in or right to such appreciation in the value of property." And after holding that the provision of the constitution must receive a reasonable construction, and showing that the construction contended for would be ruinous to corporations

seeking condemnation, it is said: "We must, therefore, hold that the damage contemplated by the constitution must be an actual diminution of present value or of price, caused by constructing the road, or a physical injury to the property that renders it less valuable in the market if offered for sale."

The next case, *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co. supra,* arose after the passage of the act of 1872, and it was again held that the test of whether damages accrued to the land not taken was, whether there had been a diminution in the market value of the land by reason of the proposed improvement, and that the effect upon the whole tract remaining after part is taken must be considered. It was there insisted that the benefits to the land not taken could not, under the statute, be set off against damages, but it was held that the consideration of benefits by which the land was increased instead of being diminished in value, was not deducting benefits or advantages from the damages, "but it is ascertaining whether there be damages or not. It is but the estimation of damages, and seems to be the only fair and just mode of estimating them,"—citing *Mechem* v. *F. R. R. Co.* 4 Cush. 292; *Watson* v. *P. & C. R. R. Co.* 37 Pa. St. 469; *S. Nav. Co.* v. *Thoburn,* 7 S. & R. 410. And it was held: "If the market value of the tract will not be diminished by the construction and operation of the road, the land can not be said to be damaged thereby."

The next case was *Eberhardt* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 347, and the question was as to the damages resulting to lands not taken, and it was said: "We had occasion to examine the question here arising * * * in the case of *Chicago and Pacific Railway Co.* v. *Francis, supra,* in which the majority of the court held that, under the constitution and law, where land was not taken, but damaged, only, the question should be, 'Will the property be of less value when the road is constructed than it was when it was located?' If so, then the difference is the true measure of

damages." And an instruction that "as to lots not taken the jury will find as damages the depreciation in the market value of the same by reason of the construction and maintenance of said railroad," was approved.

In *Chicago and Pacific Railway Co.* v. *Stein et al.* 75 Ill. 41, suit was brought to recover damages sustained by the construction and maintenance of a bridge, its piers and protections, across the north branch of the Chicago river. It is there said: "If the erection of the bridge was an injury or damage to the premises, permanent in its character, and not such as was shared by the public at large, then it was proper for appellees to establish the fact that the value of the premises had decreased by the erection of the bridge. In other words, it would have been proper to have shown how much less the property would sell for in consequence of the erection of the bridge than if it had not been built."

The next case to which our attention is called is *Keithsburg and Eastern Railroad Co.* v. *Henry*, 79 Ill. 290, which we shall have occasion to notice further on.

The case of *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller*, 82 Ill. 208, was predicated upon an ordinance of the town of Vandalia, and accepted by the railway company, in which it was provided that the company should be bound to pay all damages occasioned by the construction of the road to property owners on the streets through which the road was permitted to run, and while the same rule was announced, it was placed entirely upon the provisions of the ordinance, and need not be here further noticed.

The next case in which the question was involved, was that of the *City of Elgin* v. *Eaton*, 83 Ill. 535. That was an action against the city to recover damages to lots by reason of the change of grade of streets. After holding that the action would lie, the court says: "The question then presents itself, what was the measure of damages?  *  *  *  If the property is worth as much after the improvement as before, then

there is no damage done the property.   If the benefits received from making the improvement are equal to or greater than the loss, then the property is not damaged for public use.   We apprehend there can be no 'damage' to property without a pecuniary loss.   If there is no depreciation in value there is no damage, and if no injury then there shall be no recovery," —citing *Chicago and Pacific Railway Co.* v. *Francis, supra.*

The same doctrine is announced and rule laid down in *Village of Hyde Park* v. *Dunham,* 85 Ill. 569, upon the authority of the cases before considered.

In *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hall,* 90 Ill. 42, it was held that the damages to property not taken for public use must be real and not speculative, and must depreciate the price or its use, "and the depreciation is determined by comparing its value before and after the structure is made which produces the injury.   Any benefits thus conferred should be considered, as well as injury inflicted by the structure, in estimating the damages,"—citing the *Francis, Page, Eaton* and other cases, in support of the rule.

In *St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 Ill. 347, an instruction saying to the jury, "that in estimating the damages to the balance of the farm through which the road ran, you should consider this railroad as running only through this farm, and should not consider any general benefits which the road might be in making a better market or convenience of travel," etc., was approved.   There was no discussion of the question, and it is evident that the view taken was, that the instruction was proper, as excluding those general benefits which flow to the public generally, and not such as would appreciate the market value of the particular tract of land.

In *McReynolds et al.* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152, the jury were instructed, that if, by the construction of the railway, the lands would be specially benefited to the extent, or greater than, they would be damaged, then

the jury should only find a verdict for the compensation for the strip of land actually taken. It was insisted that this was contrary to the provisions of section 9 of the Eminent Domain act, and in the face of *Keithsburg and Eastern Railroad Co.* v. *Henry*, 79 Ill. 290. The court, without referring to that case, or to any authority in this State or elsewhere, approved the instruction. In so doing the court was in entire harmony with all of its former rulings, since the adoption of the present constitution, except the *Henry case, supra,* and, as will be seen later, in direct conflict with that case. The objection to the instruction noticed by the court was, that the "special benefits" were not limited by the instruction to such as "were not common to other property." It was then said, "special benefits mean benefits not common to other property," and it is insisted that this is authority for the position that benefits can not be considered in estimating damages, where other property may be likewise benefited. The attention of the court was not called to the distinction here sought to be made, and the court did not attempt to determine the question, and undoubtedly used the term "benefits common to other property," as designating those benefits which flow to the public generally, as distinguished from those which enhance the value of the specific property, and without intending to exclude any elements arising from the improvement that tended to specifically enhance the value of the particular property.

In *Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 Ill. 97, it was again expressly held, that, as to the land damaged but not taken, the measure of damages is the difference between its value before and after the proposed public improvement, in that case the building of appellee's railroad,— citing in support the *Francis* and *Page cases, supra.*

*Chicago and Evanston Railroad Co.* v. *Blake*, 116 Ill. 163, referred to by counsel, as respects the question here involved, was decided upon the authority of *Page* v. *Chicago, Milwaukee and St. Paul Railway Co. supra*, and, as understood by the

court, in accordance with the doctrine of that case. The language of the instruction, the giving of which was held not to be reversible error, "under the laws of this State no benefits or advantage which may accrue to lands or property in common with all other property along the line of the proposed railroad," by reason of its construction and operation, can be lawfully set off, etc., was understood to mean those benefits of a general nature which each tract of land or parcel of property along the line of railway shared in common, by reason of increased facilities for traffic and commerce, and the like, and which, while resulting in benefit to the community at large, are incapable of measurement or computation when applied to a particular tract of land.

In *Cemetery Association* v. *Minnesota and Northwestern Railroad Co.* 121 Ill. 199, the doctrine is again announced, that the market value of the land before and after the construction of the railroad furnishes the true criterion for determining the damages to lands damaged but not taken, and is in entire harmony with the *Page* and other cases, previously considered.

In *Chicago, Burlington and Northern Railroad Co.* v. *Bowman et al.* 122 Ill. 595, it was again held : "If the lands not taken would be depreciated in value by the construction and operation of the proposed railroad, the measure of damages would be the difference in their market value before the construction of the road and after its construction,"—citing the *Francis, Page, Eberhardt, Hall* and *Dupuis cases.*

In *Kiernan* v. *Chicago, Santa Fe and California Railroad Co.* 123 Ill. 188, an instruction saying to the jury, that "the decrease, if any, in the actual fair cash market value of the lands and property not taken, by reason of the construction and operation of the railroad, are the proper measure of damages and compensation which you are to ascertain in this case," was expressly approved.

*Harwood* v. *Bloomington,* 124 Ill. 48, was a proceeding by the city to condemn property for street purposes, under article 9

of the Cities and Villages act. The court, after holding that where land is taken for public improvement, the owner, under our constitution and statute, is entitled to the value of the land actually taken, without regard to any supposed benefits that may accrue from the improvement, (*Green* v. *Chicago*, 97 Ill. 371,) say: "But where the owner interposes a claim for damages to that portion of the land not taken, in consequence of the improvement, if the land not taken has received special benefits,—benefits not common to other property,—such benefits may be considered in arriving at the amount of damages the owner may have sustained to his property not taken." The court was not there called upon to define what were special benefits, or when benefits were "common to other property," and did not attempt to do so. The sense, however, in which the words were used in the opinion in that case is clearly indicated by the cases cited in support, among which are *Village of Hyde Park* v. *Dunham*, *City of Elgin* v. *Eaton*, the *Page case*, and *McReynolds* v. *Railway Co. supra.*

In *Wabash, St. Louis and Pacific Railway Co.* v. *McDougall*, 126 Ill. 111, it was held that the measure of damages to the land not taken is the difference between the value of the land, as a whole, before and after the construction of the road built according to the plan proposed,—citing a number of the earlier cases before considered.

*Chicago, Peoria and St. Louis Railway Co.* v. *Aldrich*, 134 Ill. 9, is an instructive case. There an instruction was given stating to the jury, that in estimating the damages to the defendant's land not taken, they should consider the railroad as running only through his farm, and should not consider any general benefits which the road might occasion by making a better market or by affording convenience for travel, and that it would not be proper to take into consideration such benefits as the defendant might enjoy in common with the owners of other lands through which the road might run, etc. The court said: "The general benefits arising from the

construction and operation of the road, and which the defendant will share in common with others, will grow out of the fact that the road is not limited in its effect to one locality, but is to connect and form a commercial highway between points distant from each other. The instruction to the jury to consider the road as running through the defendant's farm, was manifestly given for the purpose of eliminating from their minds all consideration of those general or commercial advantages which will flow to the public from the construction of the road, but which should in no way influence the assessment of damages." It was not necessary for the court there to determine what were special benefits, but the opinion clearly shows that by "benefits enjoyed in common with others," were meant those general and commercial advantages which flow to the public from the construction and operation of the road.

*Springer* v. *Chicago*, 135 Ill. 552, was a suit brought to recover damages alleged to have been caused by the construction of a bridge and viaduct, and approaches thereto, in one of the streets of Chicago. The court gave for the defendant instructions by which the jury were directed, that "if by the improvement, as a whole, the property is benefited as much as it is damaged by the construction, etc., alone, then there can be no recovery." It was said of this instruction, where an action is brought to recover damages where property is damaged by a public improvement only: "The law is well settled that a recovery can not be had unless the property claimed to be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair market value of the property is as much immediately after the construction of the improvement as it was before, no damage has been sustained and no recovery can be had." And again the *Eaton, Francis, Hall, Haller, Eberhardt* and *Page cases* are referred to as sustaining the position of the opinion. And this is again followed in *Chicago, Peoria and St. Louis Railway*

*Co.* v. *Eaton,* 136 Ill. 9, a condemnation case, and the like doctrine announced.

In the later case of *Washington Ice Co.* v. *Chicago,* 147 Ill. 327, also a condemnation case, it is said: "For land taken no benefits to lands not taken can be set off, but payment of the compensation for the damages accruing to the land not taken may be made in benefits to the property not common to the other property affected,—that is, the special benefits accruing to the particular property may be set off against the damages to the land not taken by the improvement, so that if the special benefits equal or exceed the damages, the owner can recover nothing as damages to property not taken; if less, he will recover the difference, only." As a matter of course, in using the language that special benefits may be set off against the damage done to the land, is meant, that in estimating the damages to the land not taken, the special benefits accruing to it from the improvement must be considered, so that if the benefits equal the damage which would otherwise be done, there is no damage and can be no recovery.

The case of *Keithsburg and Eastern Railway Co.* v. *Henry,* 79 Ill. 294, before referred to, announces a different rule, and can not be reconciled with the other cases to be found in this State. It is there held, that under the statute (act of 1872) the question of benefits can in no case be considered in estimating the value of land taken or in estimating the damages to land not taken. None of the cases previously decided, as before shown, (nor, indeed, is any other authority referred to,) sustain the doctrine of that case, and we have been unable to find any subsequent case in which it has been cited, except in *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152, where it was referred to by counsel, as before shown, but it is not referred to in the opinion, and a holding contrary to it is made. There may be expressions in other cases seemingly inconsistent with the doctrine of the *Page case,* but when the opinions are considered in the light of what was then be-

fore the court, as must always be done, they will be found not to be irreconcilable with the general doctrine.

By a practically unbroken line of decisions in this State it is well settled that the test, under the present statute, as to whether land not taken is damaged, is the effect of the improvement upon the value of the land. Under the rule, land is said to be damaged only when there is a diminution in its value,—a depreciation in its price or worth,—and the compensation required to be made is the amount of depreciation or diminution in value occasioned by the construction and operation of the railroad, or other improvement. Special benefits are such benefits flowing from the proposed public work as appreciably enhance the value of the particular tract of land alleged to be benefited. As already said, the fact that other property in the vicinity is likewise increased in value from the same cause,—that is, also specially benefited by the improvement,—furnishes no excuse for excluding the consideration of special benefits to the particular property in determining whether it has been damaged or not, and if it has, the extent of the depreciation in value. (*Wilson* v. *Board of Trustees, supra; Bohm et al.* v. *Metropolitan Elevated Railway Co.* 129 N. Y. 576; *Rigney* v. *Chicago*, 102 Ill. 64.) On the one hand, the damages must be real and substantial; on the other, the benefits must be such as affect the market value or use of the land, and such as are capable of measurement and computation. Hence, all imaginary and merely speculative damages or benefits are excluded from consideration. The consideration of such benefits as tend specifically to enhance the value of the particular property is not setting off benefits against the damage to the property, but is the simple ascertainment of whether the land has been in fact depreciated in price or worth,—that is, whether loss or damage has resulted to the owner,—for if his property is of the same value after as before the improvement he has sustained no loss. If he has lost nothing,—if his property has not been depreciated in price

or value,—it is not damaged, within the meaning of the constitution, and there can be no recovery. There can be no damage to property without pecuniary loss or injury which lessens its value.

It therefore follows that every element arising from the construction and operation of the railroad or other public improvement, which, in an appreciable degree, capable of ascertainment in dollars and cents, enters into the diminution or increase of the value of the particular property, is proper to be taken into consideration in determining whether there has been damage, and the extent of it. Thus, the situation of the property, the use to which it is devoted and of which it is susceptible, the character and extent of the business to which it is adapted, before and after the construction of the public work, and, indeed, every fact and circumstance legitimately tending to show a depreciation or enhancement of the value of the property, are proper to be considered, so far as they tend to show the actual value of the land without and with the proposed taking for the public use, while, on the other hand, a consideration of facts or circumstances tending to show those general benefits supposed to flow to the community at large, or to the public generally, from the construction of· the proposed railroad or other public work, and the effect of which, in determining the injury or benefit to the particular tract of land, can not be other than conjectural and speculative, is excluded.

We need not pursue the discussion. It is apparent, as before stated, the real question to be determined is the value of the land not taken, at the time of filing the petition for condemnation, with and without the improvement. (*South Park Comrs.* v. *Dunlevy*, 91 Ill. 49 ; *Cemetery Ass.* v. *Railroad Co.* 121 id. 205.) Other cases in this State, among which may be mentioned *Shawneetown* v. *Mason et al.* 82 Ill. 337, and *Rigney* v. *Chicago*, 102 id. 64, amply support the views here expressed. See, also, *City of Atlanta* v. *Green*, 67 Ga.

86; *Same* v. *Word,* 73 id. 276; *Newman* v. *Railway Co.* 118 N. Y. 618; *Bohm et al.* v. *Metropolitan Elevated Railway Co.* 129 id. 576.

Nor can it be said that the error in giving the instructions indicated, was cured by other instructions in the case. It is true, the jury, by the third instruction, were told that "just compensation means the payment of such sums of money to the owners of property proposed to be taken or damaged as will make them whole, so that, on receipt by such owners of the compensation and damages awarded, they will not be poorer by reason of their property being so taken or damaged." That this is an accurate statement of the law is not questioned. But it was immediately followed by the eleventh, twelfth, fourteenth, sixteenth, twenty-first, and other instructions, in which the jury were specifically told that in arriving at the compensation they must exclude from their minds, and had no right to take into consideration, or to offset against any damages which may be sustained, any benefits or advantages which may accrue to said property in common with other property in the vicinity of the line of the proposed railroad, by reason of its construction and operation. The jury would understand from these instructions, that in determining the compensation to be paid for land not taken, all benefits to the particular property, where like benefits were conferred upon other property in the vicinity by the construction of the railroad, must be excluded from their consideration, although such benefits might materially enhance the value of appellees' lots, even to an extent that would show there was no depreciation therein by reason of the building of the railroad, and would award compensation upon that basis.

In respect of the second instruction given for appellees, without quoting it, it should be said, that the jury have little to do with the theory and policy of the law, and instructions should be so drawn as to be a concise and accurate statement of the law as applicable to the facts of the particular case.

While the giving of this instruction would, perhaps, not be prejudicial error, it was improper, as bringing to the attention of the jury, in an argumentative form, matters with which they had no immediate concern.

For the error in giving the instructions before indicated, the judgments in the several cases involved in this appeal are reversed and the causes remanded.

*Judgment reversed.*

Mr. JUSTICE MAGRUDER, dissenting.