# KEITHSBURG AND EASTERN RAILROAD COMPANY

*v.*

# HENRY A. HENRY.

1. RIGHT OF WAY—*whether benefits can be set off against damages on condemnation.* Under the Eminent Domain Law of 1872, where a railroad condemns land for a right of way, the jury, in assessing damages to the owner, may take into consideration not only the value of the land taken, but all the facts which contribute to produce the damages to that not taken, as, that the farm is put in a worse shape for cultivation or pasturage; that some portion of it is more dangerous for use; that there is danger of fire from passing engines, and all other actual inconvenience and damage the property may sustain in its use, not only for the present, but the future; and, against such damages, it is not proper to set off or allow for any benefits or advantages received by the owner of the land, in common with others, from the construction of the road.

2. SAME—*the damage to the whole farm should be considered on condemnation of right of way over it.* Where a farm, through which a railroad ran, consisted of 240 acres, and the petition for the condemnation of the right of way describes the road as running through both the quarter section and the 80-acre piece, the jury, in assessing damages, should consider the damage done to the whole farm by reason of the construction of the road.

3. OPINIONS OF WITNESSES — *on question of assessing damages for condemnation of land.* On an assessment of damages, under a proceeding by a railroad company to condemn the right of way through a farm, it is competent for witnesses, who are acquainted with the farm, and

---

familiar with the use and production of such property, and its value, to give their opinion as to the extent of damage which the construction of the road over the same will occasion. The jury are, in such case, only required to receive and weigh such evidence, and give it such weight as they believe it deserves.

APPEAL from the County Court of Mercer county; the Hon. THOMAS LIKELY, Judge, presiding.

Mr. B. C. TALIAFERRO, for the appellants.

Messrs. PEPPER & WILSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellants surveyed and located their road through appellee's lands, four rods in width. They, afterwards, being unable to agree with appellee as to the amount of compensation which should be paid him, commenced proceedings, under the statute, to condemn the right of way to this strip of ground. A trial was had, and the jury found and assessed appellee's damages at $1500, and, after overruling a motion for a new trial, the court rendered judgment on the verdict.

This proceeding was under the Eminent Domain Law of 1872, and the question raised on the record is, as to the kind and the extent of damages appellee is entitled to recover. The Eminent Domain Law is based upon section 13, article 2, of the present constitution. That section provides that "private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." The first section of the Eminent Domain Law is a transcript of that portion of the constitution above quoted. The latter clause of the 9th section of that act has this provision: "That no benefits or advantages which may accrue to lands or property affected, shall be set off against or deducted from such compensation, in any case."

Appellants' counsel asks, what does the statute mean by compensation? And does it extend to all of his farm, and every

conceivable inconvenience and annoyance to appellee, for all time to come, which would be the natural result of the construction and operation of the road, such as the noise and confusion of operating or running the trains over the road so constructed upon his land; the cutting off stock-water from a part of his farm, so as to render it personally more inconvenient for appellee to water his stock, and like personal inconveniences? And he might have added, danger from fire and of destroying his stock in crossing the road. The question he presents is, whether these are elements in fixing the damage to his property, with a view to making him just compensation. Or whether the value of the land taken is all that is required. Or if damages beyond that shall be inquired into, and if so, may benefits conferred on the property of appellee be set off against such damages.

It is properly conceded that appellee must be paid the value of the land taken, as compensation. There can be no question that such is the meaning of both the constitution and the statute. Then, does the statute require like compensation for all the damages which appellee's property will sustain by reason of the construction of the road? If it is a damage to his property, then the constitution and the statute require that he shall have compensation for such damage, and it is for the court and jury to ascertain what will be a just compensation for the damage thus done; and, in ascertaining the extent of such damages, they must assuredly look to all the facts which contribute to produce these damages. They may consider the fact that it puts the farm in worse shape for cultivation or pasturage; that it renders some portion of it less convenient, or more dangerous for use; that there may be inconvenience or danger in crossing the road with his stock to water, and that it would require a person to drive them to and from the water, in crossing the road, and the danger of fire from passing engines, and all other actual inconvenience and damage the property may sustain in its use, and, consequently, its value, not only in the

present, but for the future.   These all produce damage to the property, and are proper for the consideration of the jury.

This being so, can the company show that, notwithstanding the damage thus done, the owner has received benefits, or advantages, that should be deducted?   The statute expressly declares that they shall not be deducted from, or set off against, such compensation, in any case.   Then, the whole question turns upon what is referred to by the word "such." It, in terms, refers to compensation.   The constitution and statute had, previously, only referred to compensation for private property taken or damaged for public use.   Thus, as there had been no other compensation spoken of, there can be no question that the word "such" refers to compensation for both the taking and damaging of private property.   The compensation, then, must be made to appellee, both for the property taken and damaged by the construction of this road, and the statute, as we have seen, has prohibited any set-off or deduction from the damage his property not taken will sustain by reason of the construction of this road.   The language of the statute is so plain that it will not bear construction.

Counsel refers to former statutes that have been repealed, and to decisions made under them, whilst they were in force. He surely misapprehends the question presented.   It is, what is the rule for making compensation, under the present statute, for damage done private property taken or damaged for public use?   This statute has prescribed the mode of ascertaining what compensation shall be made, and it alone must control, and former statutes are repealed, and like decisions, so far as they conflict with the present statute, must yield to its requirements.

The General Assembly, in providing that this company, and others desiring the benefit of the exercise of the power of eminent domain, might do so on the terms and conditions expressed in the act, and if they avail of its benefits it must be on the terms prescribed, had the right to withhold all

of the benefits and privileges of the act, had they chosen to do so, or to have prescribed other terms or conditions, so the owner, who was deprived of his property, or had it damaged, for public use, should receive a just compensation therefor.

In the adoption of this act, the General Assembly probably supposed it would not be making a just compensation to the owner of property taken or damaged, for public use, to set off or deduct thereform benefits conferred by the construction of the road, in common with other property not damaged. Take, for instance, an adjoining farm. The owner would undoubtedly receive all of the benefits conferred on appellee, and he is not assessed for such benefits; and why should he receive his hundreds of dollars' worth of benefits to his property, and appellee receive no such benefits? Why, as a matter of justice, and that is what the constitution requires, should his neighbors have large benefits conferred, and he have to pay for all he derives? But be the reason what it may which influenced the General Assembly in its action, the law does not deprive him of such benefits, and it must be enforced as it is written. In this case, there is no claim that there are special benefits conferred on appellee's property not common to other property, and hence we express no opinion as to the rule in such a case.

It is objected that the court erred in permitting witnesses to give their opinions as to the extent of the damage the farm of appellant would sustain by the construction of the road. The witnesses were all acquainted with the farm, they knew the value of land, and were familiar with the use and production of such property, and were well qualified to form correct opinions as to the value of the farm, either with or without the road, and they were qualified to estimate the damages the farm would sustain. The jury were only required to receive and weigh their evidence, and to give it such weight as they believed it deserved. They were not bound to take the opinions of the witnesses as true, but to

exercise their own judgment in determining from it, and all the facts in proof before them, what was a just compensation for the damage his property would sustain.

Here was a farm of 240 acres, being connected and used as one farm, as we infer from the evidence, and the question is presented, whether the inquiry as to damages can be extended to any more than the 80-acre tract over which the road was located. It was all his property, and it was all damaged for public use, and why not, under the provisions of the statute, make him just compensation for such damage? The petition describes it as running through both the quarter and 80-acre tract, which brings it clearly within the case of *Mix* v. *The Lafayette, Bloomington and Mississippi Railway Company*, 67 Ill. 319, and it must be governed by it.

We find no fault with the finding, as the evidence would have justified a much larger verdict; nor do we perceive any serious objections to the giving of appellee's instructions, as they could not have misled the jury.

The instructions asked by appellant, and refused by the court, were opposed to the views here expressed, and were properly refused, and the judgment of the court below must be affirmed.

*Judgment affirmed.*