DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

DURING THE YEAR 1903.

---

## Hartford Deposit Co. v. J. Vernon Calkins et al.

1. CORPORATIONS—*Knowledge Amounting to a Ratification of an Unauthorized Contract.*—A corporation shall be held to have ratified its attorney's contract where such corporation had knowledge of it through its attorney, architect, directors and officers, and where it has enjoyed the benefits thereof.

2. DAMAGES—*Not Error to Allow Witness to Testify to a Lump Sum As.*—It is not error to allow a witness to testify to a lump sum as damages. If the opposite party desires to go into the details of the damages, he may do so on cross-examination of the witness.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 8, 1903.

C. H. REMY and J. B. MANN, attorneys for appellant.

A director of a company can not bind it by a contract made in its name. 2 Cook Corp., Sec. 712. In order to bind the principal on the ground that he has ratified the act of his agent by conduct, it must be shown to have been made by the principal with a full knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were known to him. Mechem on Agency, Sec. 129; Mathews v. Hamilton,

(579)

23 Ill. 470; Reynolds v. Ferree, 86 Ill. 570; Kerr v. Sharp, 83 Ill. 199; International Bank v. Ferris, 118 Ill. 470.

PEASE & POLKEY and HENRY T. HELM, attorneys for appellees.

A corporation will be deemed to have ratified the acts of an agent when, though without actual authority, it permits him to pursue a particular line of conduct for a considerable time without objection. St. L., A. & C. R. R. Co. v. Dalby, 19 Ill. 353; C., B. & Q. R. R. Co. v. Coleman, 18 Ill. 298, 299; Spelling on Private Corporations, Vol. II, Sec. 751; Metropole B. & T. B. Co. v. G. C. F. Co., 50 Ill. App. 681.

What kind or period of acquiescence amounts to ratification, and what acts constitute constructive authority or subsequent adoption are, in most cases, conclusions of fact proper for a jury, and are to be determined by the circumstances of each particular case. Spelling on Private Corporations, Vol. II, Secs. 749–751; Am. & Eng. Enc. of Law, Vol. 17, p. 162.

Where the corporation has enjoyed the benefits of a contract its assets thereto will be presumed. See 17 Am. & Eng. Enc. of Law, p. 164, note 2, for many authorities; R. R. Co. v. Wilcox, 66 Ill. 417, 419; Spelling on Private Corporations, Vol. II, Sec. 750; Fister v. LaRue, 15 Barb. 323, 325; Goodwin v. Union Screw Co., 34 N. H. 378, 380; Scott v. R. R. Co., 86 N. Y. 200.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellees Calkins and Jones had a lease of and were keeping a hotel in what is known as the Fuller Building on Dearborn street in Chicago, immediately south of and adjoining certain premises owned by the appellant on which it was constructing a large fourteen story office building in the years 1892 and 1893. It became necessary in the progress of appellant's building to cut holes or channels through the north wall of the hotel building on the second, third and fourth floors, as well as to remove a fire wall in the attic above the fourth floor, which resulted, as it is claimed, in appellees being unable to use seven rooms of their hotel

along this north wall, injury to their furniture, papering and carpets in the hotel, by reason of dust, smoke and dirt that came into the hotel through the holes in the wall, put them to extra expense to heat the hotel, and caused them also a loss of custom because of their inability to keep their guest rooms comfortable during the winter of 1892 and 1893. They brought suit for their damages in the spring of 1893 against appellant and E. F. Gobel, and recovered a judgment therefor, which was affirmed by the Branch Appellate Court, upon remittitur being required (85 Ill. App. 627), but reversed by the Supreme Court (186 Ill. 104) because of an error in an instruction. On a second trial the appellees recovered a verdict of $3,750 and judgment thereon, from which this appeal is taken. February 3, 1898, the suit was dismissed as to Gobel, and all the papers and proceedings amended accordingly. He afterward died.

For appellant it is claimed that the court should have taken the case from the jury; that there are errors in the admission and exclusion of evidence and that the damages are excessive.

The action was originally tort, the declaration being two counts based upon the wrongful act of appellant in tearing out and destroying the north wall of appellees' hotel building, thereby causing the damage above referred to. The plea was not guilty. Subsequently an additional count was, by leave of court, filed, which sets up a contract between the plaintiffs and defendants, in substance, that the plaintiffs would allow the defendants to make openings in the wall of the hotel building on condition that the defendants in making the same, and any changes in the wall, would carefully guard, protect and save the plaintiffs' premises from all exposure to cold, rain, snow, wind, dirt, and all other injurious substances which might come into plaintiffs' premises through such openings, and in case of failure to do so, or in case of damage to the walls, roof, ceilings, papering, plastering, carpets, furnishings or floor, that the defendants would pay the full value of the loss and injury,

and would fully indemnify and keep plaintiffs harmless from all damages and loss, etc.

A breach of this contract is alleged, and that it caused the damages to plaintiff hereinabove referred to. To this count there was pleaded the general issue. The record shows that on the day following the filing of this additional count, leave was given the plaintiffs to withdraw "additional counts filed herein to the plaintiffs' declaration, and it is ordered that leave be and the same is hereby given the plaintiff to amend the form of action herein by changing from case to assumpsit." It would thus appear that the only declaration remaining in the record is the counts in tort hereinabove referred to. The verdict in the common law record on the last trial finds "the defendant guilty," etc., though the verdict in the bill of exceptions is: "We, the jury, find the issues for the plaintiffs and assess their damages at the sum of $3,750." No point seems to have been made in the trial court, and none is made in this court, upon the part of the record referred to, and the case has been argued by counsel for both parties as if the trial was upon the assumpsit count. We think it evident that the intention was to withdraw the tort counts and proceed upon the count in assumpsit, and shall dispose of the case accordingly. It is said by appellant's counsel that the case should have been taken from the jury for the reason that appellees have failed in their proof to establish the contract alleged in their declaration. We think not. There is some confusion in the evidence as to whether a contract to the effect alleged in the declaration was made, or whether there was a contract between appellees and appellant only, or between appellees and one Burnham, the secretary of appellant, and said Gobel. After a careful reading of the evidence we conclude that it shows a contract to the effect alleged in the declaration between appellees on the one part, and appellant and E. F. Gobel on the other part.

But it is further argued in this connection, in substance, that Burnham, who, as the evidence shows, acted on behalf of appellant in making the alleged contract, was appellant's

Hartford Deposit Co. v. Calkins.

attorney and secretary, and had no authority as such, to act in its behalf.  It may be conceded that at the time Burnham attempted to make the contract referred to he was only its secretary, and without authority to enter into a contract which would bind appellant, unless expressly ratified by appellant, or its action has been such as to amount to a ratification thereof.  It appears that one Cobb was the architect of the building, which was constructed under his direction, pursuant to a contract between appellant and Gobel, and was also a director of appellant.  One Johnson was president, and one Hecht was a director and the treasurer of appellant, and said Hecht, said Burnham and one Woodruff were members of an executive committee of appellant.  It was the duty of this executive committee, among other things, to supervise the planning and construction of the building, and generally superintend all business connected therewith.  The evidence also shows, and it is not contradicted, that this committee was practically abandoned—that it never did any work, though there is no evidence that it was at any time discharged or relieved of its duties, which are specified in article 14 of the by-laws of appellant, as above stated.  One Maurer, who was employed by Cobb as the superintendent of construction of appellant's building, was present, and daily directed all the work done upon it.  The office of Burnham, who was the attorney and secretary of appellant, was, at the time of the making of the contract between appellant and appellees, the office of the company.  It also appears that Cobb, Gobel, Hecht and Johnson had jointly directed Burnham to "assist Gobel in making all arrangements with the parties adjoining on the south and west, and to report to them," evidently referring to arrangements with such parties for the use of their property, and incidentally to agree to compensate them for such use and for any damages they might suffer; and he did so while the building was going up.  It thus appears that not only Burnham, the attorney and secretary of the company, but Hecht, a director and treasurer, Johnson, the president, and Cobb, the architect,

and a director of appellant, had notice of and were responsible for whatever arrangement Burnham made with appellees. It is true, he denies that he made the arrangement with appellees which the evidence tends to show that he did, viz., the contract alleged in the declaration, but at least he, as attorney and secretary of the company, its architect, also a director, another director, and its president, all knew of the progress of the building, and must have known that it was necessary to do practically what was done to the appellees' hotel building in order to construct its own building. It appears from the evidence that Burnham was active in the management of appellant's business and affairs, and assumed to act on behalf of appellant in making the said contract with appellees. By reason of the facts and circumstances referred to, as well as other minor matters not mentioned, we are of opinion that appellant should be bound by the contract made by Burnham on its behalf and that of Gobel with appellees. It should be held to have ratified Burnham's contract because of its said knowledge through its attorney, architect, directors and officers, and the benefits which it has enjoyed by reason thereof. R. R. Co. v. Coleman, 18 Ill. 298; R. R. Co. v. Dalby, 19 Ill. 353–75; R. R. Co. v. Wilcox, 66 Ill. 417; Metropole Bath Co. v. Garden City F. Co., 50 Ill. App. 683; Goodwin v. The Union S. Co., 34 N. H. 380; Spelling on Priv. Corp., Secs. 750 and 751; 2 Morawetz on Priv. Corp., Sec. 632.

In Section 751, *supra*, Mr. Spelling says:

" The underlying principle of the principal's liability founded on a receipt of the benefits from an unauthorized contract, is that a contract is an entire thing which can not be adopted in part and rejected in part. An acceptance of its benefits imposes a corresponding obligation to assume its burthens."

Mr. Morawetz says, in the section cited:

" After a corporation has enjoyed the benefit of a contract, or other arrangement, made in good faith, with any of its regular agents, it is but fair that every reasonable presumption should be made in order to hold the transaction binding upon the company."

In the Dalby case, *supra*, in speaking of the liability of a corporation for the acts of its agents in a very fully considered case, the Supreme Court say:

"The public can not deal with the company in person, but only through its agents, and can not be required to go and examine the written records of its proceedings, to see who have been appointed to particular places, and with what specific powers they have been clothed. It is enough if the company suffers particular persons, openly and notoriously, to occupy particular places of responsibility in its service, without contradiction. Such acquiescence estops the company to deny the appointment, and appropriate authority incident thereto. Such is the universally adopted rule in relation to contracts, and it applies with equal propriety to torts."

In the Wilcox case, *supra*, which was assumpsit to recover for work and labor done on a side track of appellant's railroad, the court say:

"We are asked to reverse because the work was done without a contract with the agent specially appointed for the purpose. Corporations can only act by agents, and we must presume authority in persons who are permitted to act for them. It is unreasonable to suppose that the persons who assumed to act for the company were mere pretenders, without any authority. Their action was open and public, and must have been known to the principal agents of the corporation. The jury were warranted in finding that Galcord and Conover were agents, and the company should be held responsible for their acts in the premises."

It is also said in this connection that the evidence on behalf of appellees as to the contract is a fabrication; that the facts and circumstances in evidence corroborate Burnham's evidence, and therefore that the contract set up is not proved by a preponderance of the evidence. After careful consideration, we are not prepared to yield assent to this claim, and are of opinion not only that the court did not err in refusing to take the case from the jury, but that the verdict is sustained by a preponderance of the evidence in this regard.

A claim is made that the court erred in allowing to go to the jury evidence of conversations of appellees had with and

statements made by said Burnham. They all relate to his acts on behalf of appellant and evidence tending to establish the contract referred to. We think the court did not err, for the reason that Burnham was acting for appellant in making the arrangement that he did; that appellant has had the full benefit of all his acts on its behalf referred to, and should not be heard to deny his authority to act for it in that behalf.

A further claim is made that the court erred in allowing appellees to show that they purchased additional stoves, hired an additional porter, that they bought blankets and comforters, and were allowed to show the value of the furnishings of their hotel; also that appellees had only succeeded in keeping their house half full, and that people came to stay by the week and by the month, and left in a day or two, saying they could not stand it. We think the evidence tends to show that the purchase of stoves, blankets and comforters, and the hiring of an additional porter, were made necessary by reason of the holes in the north wall in the hotel made by appellant and their not being properly covered and protected so as to keep out the rain and cold. We think the evidence showing the value of the hotel furnishings was not improper, for the information of the jury in passing upon the reasonableness and credibility of the testimony as to damages, and in estimating the damages; also that the evidence with regard to keeping the house half full and people going away in a day or two, when they had come to stay longer, and their statements that it was because they could not stand it, was improper so far as the statements of people were concerned. It does not appear, however, that this evidence was objected to before it was given, and the motion after it was before the jury was to strike the whole of it out. A part of the evidence being proper, it was not error to refuse to strike out the whole of it. It was also objected that one of appellees' witnesses was allowed to testify to a lump sum as damage to the hotel furniture and furnishings, but we think the ruling in this regard was not error. If appellant desired to go into the details of the damages, that was its privilege

Hartford Deposit Co. v. Calkins.

on cross-examination of the witness. 2 Jones on Evidence, Secs. 390 and 391, and cases cited; 1 Greenleaf on Evid., Sec. 440; 1 Wharton on Evid., Secs. 450, 510, 513; Cooper v. Randall, 59 Ill. 317–20; Ottawa G. & C. Co. v. Graham, 35 Ill. 346–9; R. R. Co. v. Henry, 79 Ill. 290–4; R. R. Co. v. Woosley, 85 Ill. 370–3.

Other complaints are made as to the court's rulings upon the admission and exclusion of evidence, each of which we have considered, and find no reversible error therein. We deem it unnecessary to make special mention of the numerous items of which complaint is made.

It is also claimed that the damages awarded to appellees are grossly excessive, and are based upon injuries voluntarily or negligently permitted by them. The damages testified to on behalf of appellees aggregate more than $4,900, omitting all moneys expended for stoves, furniture and furnishings, as well as the value of hotel furnishings testified to by appellees' witnesses. The jury allowed $3,750, and we think the award is not unreasonable, in view of the amounts and various details testified to by the different witnesses. If the amounts alone are considered, the verdict is quite conservative.

It seems to us, the whole evidence considered, appellees might, by incurring no great expense, have prevented much of the damage they claim to have suffered, but their evidence is that the repeated statements of Burnham to them were that the openings would soon be closed permanently, and the damage, which was continuing from day to day, would be stopped. They certainly had the right to rely on the promises which they say Burnham made to them in response to their frequent complaints, and can not be charged with either voluntarily or negligently permitting their property to be damaged. At most it was a question of fact for the jury, on which it was properly instructed, that has been found in favor of appellees, and in our opinion their finding is not against the manifest weight of the evidence.

The record presents no error which requires a third trial, and the judgment is affirmed.