ELLA A. BRAND *et al.* Exrs., Appellants, *vs.* THE UNION
ELEVATED RAILROAD COMPANY *et al.* Appellees.

*Opinion filed February 20, 1913—Rehearing denied April 2, 1913.*

1. REAL PROPERTY—*rule for determining whether property not taken is damaged.* In determining whether property not taken for the construction of an elevated railroad is damaged by the construction and operation of the road it is improper to consider general benefits affecting the community; but if the property not taken is enhanced in value by reason of the construction and operation of the railroad such increase in value is a special benefit as to the particular property and not a general benefit, notwithstanding other property in the vicinity is also enhanced in value by reason of the improvement.

2. SAME—*if property not taken is enhanced in value by the improvement it is not damaged.* If property not taken for the construction of an elevated railroad is not depreciated in market value by the construction and operation of the railroad, or if its market value has been increased by reason of the improvement, it cannot be said to have been damaged by reason of noise and vibration, obstruction of light and air or interference with access to the property, even though other property in the vicinity of the improvement has also increased in value. (*Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362, followed; *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 id. 290, criticised.)

CARTWRIGHT, J., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

HARRY S. MECARTNEY, for appellants.

JAMES J. BARBOUR, (ADDISON L. GARDNER, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was brought by appellants against appellees to recover damages alleged to have been sustained to their property from the construction of an elevated railroad in

the street upon which the property abuts. Appellants' property fronts east on Wabash avenue, in the city of Chicago, and is situated between Jackson and VanBuren streets. Upon the request of the parties the jury viewed the premises, and appellants introduced on the trial the testimony of Christian Florup, who was engaged in the real estate business, and was, and had been since prior to the construction of the elevated railroad, agent for the property and collector of rents of the building. He was the only witness offered upon the question of damages. At the conclusion of the evidence for appellants, the court, on motion of appellees, instructed the jury to return a verdict of not guilty. A motion by plaintiffs for a new trial was overruled, judgment rendered on the verdict and plaintiffs appealed to this court. The court, being of opinion no constitutional question was involved authorizing an appeal direct to this court, transferred the case to the Appellate Court for the First District. That court affirmed the judgment of the superior court and granted a certificate of importance, upon which plaintiffs below brought the case by appeal to this court.

Numerous errors were assigned in the Appellate Court, but counsel for appellants states in his brief that all of them were withdrawn except those raising the question of the correct rule for assessing damages to property not taken but affected by a public use, and this is the only question discussed in the briefs in this court.

Appellees' elevated structure was completed and the road put in operation in October, 1897. The witness Florup described appellants' building and its uses, and the effect upon the property and its use by the construction and operation of the elevated railroad. He testified to the rentals received from the building before and after the construction of the road and the value of the property before and after its construction. He placed its value at $4800 per foot before the road was built, and testified that it did not decrease in market value by reason of the construction

of the road.   About three years after its completion the
property increased in value to $6500 per foot.   The un-
disputed evidence, therefore, was that the market value of
appellants' property was not depreciated by the construction
of the road.   It is claimed, however, that this was the re-
sult of general benefits common to all property in the neigh-
borhood served by the improvement, and that such benefits
should not be considered in determining the damages; that
only special benefits, such as are a direct physical improve-
ment to the property, like the draining of a wet, swampy
tract of land by the improvement, or building a bridge
across a stream running through the land, which enables
the owner to enjoy it with greater advantage by reason
of the improvement, should be considered in determining
whether the property is damaged.   Appellants contend that
the benefits to their property by reason of the improvement
which operated to prevent a decrease in its market value
were general benefits; that there were no special benefits,
but, on the contrary, the improvement injuriously affected
the use of appellants' property by obstructing air and light,
by noise and vibration, and by interference with access to
their property, and they insist they are entitled to recover
the damage thus resulting without any reference to the
other benefits that may have resulted from the improvement.

This question is not a new one in this State.   Since the
adoption of our present constitution and the passage of
the Eminent Domain act the question has been passed upon
by this court a great many times.   The first reported cases
are *Page* v. *Chicago, Milwaukee and St. Paul Railway Co.*
70 Ill. 324, *Chicago and Pacific Railroad Co.* v. *Francis,* 70
id. 238, and *Eberhart* v. *Chicago, Milwaukee and St. Paul
Railway Co.* 70 id. 347.   In all three of these cases it was
held the true measure of compensation for land not taken
by the improvement was the difference between what the
property would have sold for unaffected by the improve-
ment, and what it would sell for as affected by it.   In the

*Francis case* the court said: "It cannot be said appellee has sustained damage when his property is worth and will sell for as much, or more, than if no road had been built." That case was cited, and the rule announced adhered to, in the *Page case.* The decision in the *Eberhart case* (opinion by Justice Breese) was based upon the *Page* and *Francis cases,* and the opinion in the *Page case* was referred to for a discussion of the proper measure of compensation for property not taken. The rule announced in those cases has, with one exception, been followed in subsequent cases, down to *Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362. That was a proceeding to condemn the right of way across certain lots, in which proceeding damages were claimed and awarded for injury to the parts of the lots not taken. The court instructed the jury that they could not consider any benefits to the property which might arise from the construction and operation of the railroad unless the evidence showed such benefits were special to the particular property and not shared by it in common with the generality of property in the vicinity of the line of the proposed railroad. In the opinion the court reviews all its previous decisions since the adoption of the constitution of 1870 and sums up its conclusions in the following language: "It therefore follows that every element arising from the construction and operation of the railroad or other public improvement which in an appreciable degree, capable of ascertainment in dollars and cents, enters into the diminution or increase of the value of the particular property, is proper to be taken into consideration in determining whether there has been damage, and the extent of it. Thus, the situation of the property, the use to which it is devoted and of which it is susceptible, the character and extent of the business to which it is adapted before and after the construction of the public work, and, indeed, every fact and circumstance legitimately tending to show a depreciation or enhancement of the value of the

property, are proper to be considered, so far as they tend to show the actual value of the land without and with the proposed taking for the public use, while, on the other hand, a consideration of facts or circumstances tending to show those general benefits supposed to flow to the community at large, or to the public generally, from the con- struction of the proposed railroad or other public work, and the effect of which, in determining the injury or bene- fit to the particular tract of land, cannot be other than con- jectural and speculative, is excluded."

Appellants insist this decision and others in line with it are wrong; that the rule adopted in this State is contrary to the weight of authority in other States and to the views of Mr. Lewis in his work on Eminent Domain; also, that the rule is in conflict with *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 Ill. 290, and section 9 of the Eminent Domain act. It is quite true, the decisions in this State upon the question here under consideration are not in har- mony with the decisions of courts of last resort in some of our sister States, while they are in harmony with the de- cisions in some States. The conflict between the decisions in this State and the decisions of other States relied upon by appellants is not so much as to a rule of law as it is to the application of the rule. This court is in accord with the cases in other States holding that only special benefits are to be considered in making just compensation for land damaged by but not taken for a public use. The difference is principally as to what are general benefits and what are special benefits. Some courts hold that only those benefits are special which directly and physically operate upon the particular property in a manner different from and not shared in common by other property in the neighborhood and which enable the owner to use it with greater advan- tage. All other benefits which increase the market value of the particular property in common with other property in the neighborhood are held to be general benefits. This

view has not been adopted in this State. The rule adopted in this State is thus stated in the *Stickney case:* "If property is enhanced in ·value by reason of the improvement, as distinguished from the general benefits to the whole community at large, it is said to be specially benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may be, to a greater or less degree, likewise specially benefited. (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) In other words, it is not such benefit as is special to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but is such benefit as that the particular property is by the improvement enhanced in value,—that is, specially benefited. *' * * If a piece of property is enhanced in value, such enhancement,—or, in other words, benefit to the property,—cannot be said to be common to any other piece of property. Each piece of property especially enhanced in value is thus specially benefited within itself and irrespective of the benefit that may be conferred by the improvement upon other properties. It follows, necessarily, that where the benefits are designated as 'general benefits,' 'benefits common to other property,' and the like expressions to be found in decided cases, it is meant those general, intangible benefits which are supposed to flow to the general public from a public improvement. * * * By· a practically unbroken line of decisions in this State it is well settled that the test, under the present statute, as to whether land not taken is damaged, is the effect of the improvement upon the value of the land. Under the rule, land is said to be damaged only when there is a diminution in its value,—a depreciation in its price or worth,—and the compensation required to be made is the amount of depreciation or diminution in value occasioned by the construction and operation of the railroad, or other improvement. Special benefits are such benefits flowing from the proposed

public work as appreciably enhance the value of the particular tract of land alleged to be benefited. As already said, the fact that other property in the vicinity is likewise increased in value from the same cause,—that is, also specially benefited by the improvement,—furnishes no excuse for excluding the consideration of special benefits to the particular property in determining whether it has been damaged or not, and if it has, the extent of the depreciation in value. * * * Hence, all imaginary and merely speculative damages or benefits are excluded from consideration. The consideration of such benefits as tend specifically to enhance the value of the particular property is not setting off benefits against the damage to the property, but is the simple ascertainment of whether the land has been, in fact, depreciated in price or worth,—that is, whether loss or damage has resulted to the owner,—for if his property is of the same value after as before the improvement he has sustained no loss."

The only case in this State that is out of line with the *Stickney case* and those previously and subsequently decided is *Keithsburg and Eastern Railroad Co.* v. *Henry, supra,* and that case has not been followed in any subsequent decision.

Counsel is in error in saying the author of the opinion in the *Stickney case* failed to mention section 9 of the Eminent Domain act. It is expressly referred to on page 373 in commenting upon the *Page case,* and that part of the section relied upon by appellants is quoted. The section was also quoted in the *Page case.* The *Stickney case* and the previous decisions, with the one exception referred to, have been since uniformly followed and adhered to. The last cases to which our attention has been called are *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 225 Ill. 270, and *Eldorado, Marion and Southwestern Railroad Co.* v. *Everett,* 225 id. 529. In the *Vance case* the court said: "Since the adoption of the constitution of 1870 it

has been uniformly held by this court, in such cases as this, that the measure of damages to land not taken is 'the difference in the fair cash market value of the land before and after the construction of the railroad,' or 'the amount, if any, which lands not taken will be depreciated in their fair cash market value by the construction and operation of the proposed road.' * * * Under the rule adopted in this State for determining whether, or in what amount, property not taken will be damaged by the construction and operation of a railroad, any benefits which are not conjectural or speculative, and which actually enhance the market value of such property, are to be considered as special benefits and not as general benefits, within the meaning of the rule that general benefits cannot be considered in determining whether, or in what amount, property not taken will be damaged. Special benefits do not become general benefits because the benefits are common to other property in the vicinity. The fact that other property in the vicinity of the proposed railroad will also be increased in value by reason of the construction and operation thereof furnishes no excuse for excluding the consideration of special benefits to the particular property in determining whether it has been damaged, and if it has, the extent of the depreciation in value." In the *Everett case* the court said: "The real question submitted to the jury, as repeatedly stated in the decisions of this court, was the value of the land not taken, at the time of filing the petition, with and without the improvement, and the fact that other property in the vicinity is increased in value by the construction and operation of the road furnishes no excuse for excluding special benefits to the particular property in determining whether it has been damaged or not. * * * The lands, generally, along the line in this vicinity were coal lands, and might all be benefited by reason of improved facilities for mining and transporting coal. Considering benefits which enhance the value of the particular property is not setting off benefits

against damages, but is simply ascertaining whether there are damages or not.  If the property is of the same value after as before the improvement the owner has sustained no loss.  Damages cannot exist if the value of the property is not lessened, and the benefit which the land owner secures as an owner of the property is a special benefit.  In determining whether land has or has not been damaged the jury should consider whether the market value of the property remaining will be enhanced by the improvement, although other property in the vicinity will be likewise benefited.  (*Metropolitan West Side Elevated Railway Co.* v. *White,* 166 Ill. 375.)  It is true that general benefits affecting the whole community, whether owners of property along the line of a railroad or not, such as increased facilities for travel, the increase of population and enhancing the general prosperity, are not to be taken into account; but benefits flowing from the proposed improvement which appreciably enhance the market value of the particular tract of land and offset injuries to it are to be considered, for the purpose of determining the ultimate question whether there are damages to the lands not taken."

We are not disposed now to enter upon a discussion of the correctness of the rule adhered to for forty years, nor do we feel at liberty, even if we were so inclined, to overrule the large number of decisions that would have to be overruled to justify a reversal of this judgment.  The judgment is in harmony with the law in this State, and is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

It is with no little hesitation that I record my disagreement with the decision of this case.  I am equally averse to overturning established rules of law and substituting uncertainty for certainty, but cannot concur in what I do not understand to be an established rule for the ascertainment of damages to property resulting from a public use.  If my

disagreement should amount to a confession of want of perception, it is nevertheless a fact that I have not regarded the decisions as establishing a rule so unfair to the citizen and advantageous to the authority invested with the power to take and damage private property for public use as that the question of damage is to be determined solely by the market value of property, regardless of all the elements and conditions affecting such value. As I understand the decisions, the rule has been that the property owner may re-. cover for all special injuries to his property so far as they affect its fair cash value, and against such injuries may be set off all such benefits as are special and peculiar to the property, but he is neither entitled to recover for injuries common to the public at large nor chargeable with benefits of that character. Illustrating those injuries to property not taken which he is entitled to prove and for which he may recover the consequent damages, are the following:

Loss of use of a spring. *Peoria and Rock Island Railway Co. v. Bryant,* 57 Ill. 473.

All physical injuries and all inconveniences of every character actually produced by the public use. *Jones v. Chicago and Iowa Railroad Co.* 68 Ill. 380.

The fact that a portion of a farm is cut off by a railroad. *Galena and Southern Wisconsin Railroad Co. v. Birkbeck,* 70 Ill. 208.

Separation of wood, water and timber from the balance of a farm. *Chicago and Iowa Railroad Co. v. Hopkins,* 90 Ill. 316.

Cutting off a part of a farm from the remainder and inconvenience in reaching a highway. *DeBuol v. Freeport and Mississippi River Railway Co.* 111 Ill. 499.

Injuries arising from inconveniences, such as dividing land as to water, pasture and improvements, although not capable of definite ascertainment; danger of killing stock or injuries to pasture stock; escape of fire, and, generally, all damages reasonably probable from the construction and op-

eration of a railroad. *Chicago, Burlington and Northern Railroad Co. v. Bowman,* 122 Ill. 595.

The fact that a farm is put in worse shape for cultivation and pasturage, that there is danger of fire, and all other actual inconveniences. *Chicago, Peoria and St. Louis Railway Co. v. Blume,* 137 Ill. 448.

The separation of buildings from a well. *Illinois Central Railroad Co. v. Town of Normal,* 175 Ill. 562.

The increased cost of insurance. *Indiana, Illinois and Iowa Railroad Co. v. Stauber,* 185 Ill. 9.

The size and shape of the parts in which a farm is divided and difficulty of access to the different parts. *Chicago Terminal Railroad Co. v. Bugbee,* 184 Ill. 353.

Danger from fire. *Illinois, Iowa and Minnesota Railway Co. v. Ring,* 219 Ill. 91.

Danger to stock and loss by fire. *Chicago Southern Railway Co. v. Nolin,* 221 Ill. 367.

Noise and vibration if buildings are near enough to be affected.

The property owner is entitled to prove all injuries of that kind which are special and which affect the cash value of his property. The benefits that may be set off against such damages are such as accrue to the particular property and are not common to property generally. "The constitutional provision is equally mandatory that property shall not be damaged for public use without just compensation as it is that it shall not be taken for such use without just compensation." (*Washington Ice Co. v. City of Chicago,* 147 Ill. 327.) It is true that other property in the vicinity may also be specially benefited in the same manner, as in the case of a region where the lands are underlaid with coal of no value without facilities for transportation, of which *Eldorado, Marion and Southwestern Railroad Co. v. Everett,* 225 Ill. 529, is an example. So, also, numerous farms or pieces of property may be severed into different parts and the injuries be of the same character and special

as to each piece of property. The special benefits must affect the property directly and proximately and increase its actual value, and, the court having uniformly laid down these rules and sustained instructions to juries stating them, it would be inconsistent to require the jury to forget it all, disregard the exclusion of general and public benefits, and determine the issue upon the single, bare question whether the property would sell for as much after the construction of the improvement as before, which necessarily includes all common and general benefits. The only consistent rule is, that the jury shall take into account special injuries and benefits affecting the fair cash value of the property, and if the damages exceed the benefits, award to the property owner the difference. This rule, according to my understanding, applies to all cases. In this case damage was claimed to property by the occupation of a public street with an elevated railroad. There were two classes of rights in the street: the one, the public right to use the street for travel, and for that only; the other, the right of the property owner of ingress and egress, use in connection with his property and the appurtenant easements. If there was an obstruction to the public use for travel by the iron pillars there could be no recovery by the owner for consequent damage, but if his right of access was impeded or interfered with or his property rendered less valuable on account of noise, vibration or other natural consequence of the construction and maintenance of the road, the damage resulting was special to that property. The thing would be a nuisance if there were no authority of law for its construction and operation, and whenever an act is done which without statutory authority would be a nuisance, the owner of property affected by it sustains a special and peculiar damage different from that sustained by the public in general, and may have his action for damages resulting from his individual and distinct right. (*Rigney* v. *City of Chicago,* 102 Ill. 64.) In this case there was a direct physical

disturbance of a right enjoyed in connection with the ownership of property, and if there was any damage by reason of the disturbance of the right it was special. Against any such damage general benefits to the public, although enhancing the value of the property in question in common with other property in the vicinity, could not be considered. To say that the only test is the market value of the property before and after the improvement, regardless of causes affecting the value, necessarily charges the owner with benefits, which this court has repeatedly held could not be done, and makes the owner contribute to a liquidation of special injuries his share of the general benefits derived from the construction and operation of the road. I have understood the oft-repeated declaration that damages are to be based upon actual cash values as necessarily implying a consideration of legitimate elements of damage and benefit and a conclusion therefrom.