Hyde Gillette et al., Trustees, Appellees, v. Healy Subway Construction Corporation et al., Defendants. Appeal of City of Chicago, Appellant.

Gen. No. 43,241.

264

Opinion filed June 26, 1946. Released for publication August 19, 1946.

BARNET HODES, Corporation Counsel, for appellant; JOHN J. MORTIMER, ALEXANDER J. RESA, PAUL DENVIR and EUGENE WACHOWSKI, Assistant Corporation Counsel, of counsel.

CASSELS, POTTER & BENTLEY and MCDERMOTT, WILL & EMERY, all of Chicago, for appellees; WILLIAM S.

WARFIELD, III, L. H. VOGEL and FRANCIS J. NOSEK, all of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

This is an action, under sec. 13 of art. 2 of the Illinois Constitution, to recover moneys alleged to have been expended by the plaintiffs for the construction of caissons, and taking of other protective measures in and about their building, occasioned by the construction of subway tunnels by the defendant City of Chicago. On motion of plaintiffs, defendants other than the City of Chicago were dismissed out of the case. There were two trials before the court and a jury. On the first trial the jury disagreed, and on the second trial it returned a verdict in favor of the plaintiff in the sum of $34,133.38, on which judgment was entered. Defendant's motions for a directed verdict and for a new trial were overruled, and defendant appeals.

Plaintiffs are the owners of a 14-story, basement and attic structure located at the southwest corner of Madison and Dearborn streets in the City of Chicago, commonly known as the Hartford Building. Prior to 1940, eight steel columns, supporting the east wall of the building, rested on what are known as spread or floating foundations. These foundations consisted of concrete mats nine feet wide and thirteen feet long upon which were placed railroad rails spaced at regular intervals, and steel I-beams. On top of the I-beams was a cast iron plate which held the bottom of each column in position.

On November 3, 1938, the city council of the City of Chicago adopted an ordinance for the construction of an initial system of subways. Afterwards, on August 22, and again on August 26, 1939, plaintiff received notices in writing from the city of its intention to commence the construction of a subway along Dearborn street adjacent to plaintiffs' building. Upon

receipt of these notices from the city, plaintiffs employed Holabird & Root, an architectural and engineering firm in the City of Chicago, to advise them regarding the probable effect upon plaintiffs' building of the construction of the subway tubes in Dearborn street, and whether protective measures were necessary. After a survey of the building and its foundations, Holabird & Root recommended to plaintiffs that each column of the building along Dearborn street be supported by a caisson four feet in diameter which would extend through the soft clay to hard pan, a distance of 60 or 65 feet, for the reason that the floating foundations would tilt or settle, thus causing damage to the entire east wall of the building. It appears that the west tube of the subway in Dearborn street was less than 10 feet below the bottom of the floating foundations which supported the steel columns of plaintiffs' building, and at its nearest point the excavation was 8½ feet from the edges of the floating foundations.

The gist of the complaint and the amendments thereto is, in substance, that the subway tunnels were to be installed close to and a considerable distance below the bottoms of the Hartford Building spread footings; that the footings were underlaid by compressible clay capable of flowing laterally, which would be disturbed by the subway tunnel construction; and that upon the recommendation and advice of the architects and engineers the caissons were installed.

Defendant City of Chicago in its answer admits that it notified plaintiffs of its intention to construct a subway along Dearborn street; that notice was given plaintiffs well in advance of the commencement of the construction of the subway tunnels so that plaintiffs might take such steps as they deemed necessary with respect to their premises. Further answering; it denies that any of the work in connection with the construction of the double tube bore or three mezzanine sta-

tions, or any other work, was intrinsically dangerous, or otherwise dangerous, to the Hartford Building, or to the lives or property of any of the tenants thereof, or that it was under any duty or obligation whatsoever to shore, or otherwise protect, plaintiffs' property. Defendant's answer admits that the caissons were installed but avers that installation of the caissons was not reasonably necessary in or for the protection of plaintiffs' property from any alleged damage due to the construction of the subway; that the benefits to the property described in the complaint, created by the construction of the subway, enhanced the value of the property to an extent equal to or greater than the aggregate amount of any and all expenditures, if any, made or to be made necessary, prudently or advisedly, in connection with the protection or repair of said building, and that the property described in the plaintiffs' complaint has not been damaged for public use.

Plaintiffs' replication alleged that no benefit to the property of plaintiffs was derived by the construction of said subway, nor was the property enhanced in value in any amount, but that, on the contrary, it has been damaged by the construction of the subway tube.

From the pleadings it appears that the issues of fact raised were, first, whether the expenditures by the plaintiffs in and for the protection of the building were reasonably necessary; second, whether plaintiffs' property was specially benefited by construction and operation of the subway system.

Defendant's first contention is that the trial court erred in excluding certain testimony of the defendant's witness Frank A. Randall. The record discloses that Randall testified in substance as follows: that he was graduated from the University of Illinois in 1905 with a degree of B.S. in civil engineering, and four years later was given a degree of C.E. in civil

engineering; that afterwards he practiced his profession continuously; that he constructed hospitals, schools, churches, factory and office buildings in the City of Chicago and various other places in the United States; that from 1938 to the time of these proceedings he had been consulting structural engineer for the subway, making preliminary studies for the subway and appraisals of buildings that were condemned along the route of the subway; that he had charge of digging approximately a thousand caisson excavations in the City of Chicago from the Y. M. C. A. Hotel at 9th and Wabash on the south to the Victor Lawson Y. M. C. A. at Chicago avenue and Dearborn street on the north, and from the lake front to the Cook County hospital on the west; that the soil conditions are the same throughout the area; that the soil to Chicago Datum, which is fourteen or fifteen feet below the pavement level, is a fill of various kinds consisting of sand and rubbish and is not a natural soil; that below the fill there is a layer of clay about six feet in thickness on which the foundations of all the buildings in Chicago, including the Hartford Building, were placed; that in his opinion the soil immediately under the footings of the Hartford Building was capable of carrying 5,000 pounds per square foot. On direct examination of the witness, defendant's counsel propounded the following question: "Have you an opinion, based upon your knowledge of the soil conditions and of the type of construction of the Hartford Building, and having in mind the shield method of construction of the subway, have you an opinion whether shoring or underpinning measures were necessary during the construction of the subway?" The trial court sustained plaintiffs' objection to the question on the ground that it was an invasion of the province of the jury. Afterwards an offer of proof was made by defendant, incorporating substantially the same question, to which the witness replied that in his opinion no shoring or underpinning was

necessary. Objection was also made to the offer of proof, which was sustained by the trial court on the same ground. In our opinion the question whether the shoring or underpinning was reasonably necessary was an ultimate issue of fact upon which the jury had to make its finding. In *Keefe v. Armour & Co.*, 258 Ill. 28, at page 33, the court said:

"The question whether the method employed was reasonably safe was an ultimate fact in the case, to be determined by the jury as a conclusion from evidentiary facts. To permit the witness to give his opinion on the ultimate fact was to supplant the jury by a witness, and practically take from the defendant the right to a judgment of the jury as to the proper inferences to be drawn from the facts."

To the same effect are *Fellows-Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 71, 77, *People v. Paisley*, 288 Ill. 310, 323, and *People v. Gould*, 345 Ill. 288, 328.

In their treatise *Opinion Evidence in Illinois*, the authors, King and Pillinger, have analyzed virtually all of the cases involving the ultimate issue rule in this State. In the summary, at page 338, they say:

"The admission by the courts of opinions on ultimate issues would result in a parade of witnesses giving mere opinions on each side such as now exists in the case of witnesses as to sanity in will contests and character witnesses in criminal cases. Anyone who has seen that procedure is impressed by its futility and its likelihood to mislead. It harks back to the old compurgators. In a sense, if a judge permitted the opinion of a witness on the ultimate issue he would be delegating to the witness the power to decide." (See also ch. 27, p. 331.)

In the instant case the effect of the foregoing question was to turn over to the witness Randall the decision as to whether the shoring or underpinning were rea-

sonably necessary. Since it was the function of the jury to determine that question, we hold that the trial court properly sustained plaintiffs' objection to the question.

■ Defendant asserts that in propounding the foregoing question it was merely following the same procedure used by the plaintiffs when on direct examination plaintiffs' witness McClurg, an engineer, was asked what the probable effect of the digging or construction of the tubes of the subway along Dearborn street adjacent to the Hartford Building would be upon the Hartford Building, to which the witness replied, "It was my opinion that if no protective action was taken, that the building might be damaged." Inasmuch as no objection was made to the answer on the ground that it was not responsive or otherwise incompetent, defendant is in no position to complain.

■ Defendant maintains that the court erred in refusing to give its instruction number 22, on the ground that the jury was not instructed concerning the meaning of the term "special benefits." In *Brand v. Union El. R. Co.,* 258 Ill. 133, at page 141, the court said:

"It is true that general benefits affecting the whole community, whether owners of property along the line of a railroad or not, such as increased facilities for travel, the increase of population and enhancing the general prosperity, are not to be taken into account; but benefits flowing from the proposed improvement which appreciably enhance the market value of the particular tract of land and offset injuries to it are to be considered, for the purpose of determining the ultimate question whether there are damages to the lands not taken."

To the same effect is *Metropolitan West Side El. Ry. Co. v. Stickney,* 150 Ill. 362, 371. In our opinion the refused instruction in question is defective, in that

it fails to differentiate between the general improvements which might accrue to the community as a whole from the public improvement and those benefits flowing from the improvements which might enhance the market value of the plaintiffs' premises. With respect to the question of special benefits we think all of the essential elements were fully covered in plaintiffs' instruction 7 and defendant's instruction 19.

Finally, defendant contends that by giving plaintiffs' instruction number 8 the court directed the jury to disregard all the testimony of defendant's witnesses relative to the increase in value of the plaintiffs' premises by reason of the construction of the subway. The record, consisting of more than 1000 pages, discloses that plaintiffs and defendant introduced the testimony of real estate experts, and that on the question whether the value of the plaintiffs' premises would be enhanced by the operation of the subway the testimony of those called by the plaintiffs was in direct conflict with that given by those called by the defendant. These expert witnesses recited in great detail all the factors which they had considered in forming their opinions, and an extended review of their testimony would serve no useful purpose. The instruction number 8 applied with equal force to both parties; therefore no prejudice resulted. Manifestly, the jury believed the testimony of plaintiff's experts.

From a reading of all of the given instructions we think the law governing the instant case was correctly and fully stated.

For the reasons indicated, the judgment is affirmed.

*Judgment affirmed.*

KILEY, P. J., and BURKE, J., concur.