WILLIAM D. KERFOOT *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed February 21, 1902.*

1. SPECIAL ASSESSMENTS—*ordinances for different sections of same improvement must be treated as one ordinance.* If one continuous improvement, originated by the board, is divided into several sections of the same character, the improvement is a single improvement and the ordinance passed for each section must be treated as one ordinance; and hence, if the aggregate estimate of cost exceeds $100,000, the ordinances must be referred to a committee, and be published in full in the proceedings of the council for at least one week before any action thereon. (Laws of 1897, p. 105, sec. 11.)

2. SAME—*absence of improper motives does not justify violation of section 11 of act of 1897.* On application to confirm an assessment, if it is objected that the improvement is a continuous, single improvement to cost over $100,000, and that the ordinances for each section should have been published under section 11 of the Improvement act, it is error for the court to call a member of the improvement board as a witness to show that the board had no improper motive in dividing the improvement into sections costing less than $100,000 each but aggregating more than that sum.

3. SAME—*cost of levying assessment must be paid out of general fund.* Section 94 of the Improvement act of 1897 provides that the cost of making and levying the assessment shall be paid by the city out of its general fund, and it is error to include such cost on confirmation, upon the mere statement of counsel that it would be deducted from the judgment.

4. EVIDENCE—*when cross-examination of witnesses is unduly limited.* If the city, in a confirmation proceeding, introduces witnesses who give opinions to show that the property was benefited to the amount of the assessment, and it is proven or admitted that such witnesses are employed by the city to examine property in special assessment cases and give their opinions, it is improper to refuse to allow cross-examination as to the amount which the witnesses received for their services, their interest in the suit and their means of knowledge and information.

APPEAL from the County Court of Cook county; the Hon. GEORGE K. INGHAM, Judge, presiding.

MASON BROS., CHARLES S. BABCOCK, and E. S. METCALF, for appellants.

EDGAR BRONSON TOLMAN, and ROBERT REDFIELD, (CHARLES M. WALKER, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The board of local improvements of the city of Chicago adopted a scheme for the improvement of Archer avenue, in said city, from State street to Western avenue, by curbing the same and grading and paving it with asphalt. Archer avenue runs south-west from State street. The entire improvement was to be made of the same material and constructed in the same manner, but it was divided into three sections, and on April 29, 1901, the board sent to the city council three ordinances, one providing for the construction of the improvement from State street to Stewart avenue, the next continuing the same kind of improvement to Ashland avenue, and the third providing for its construction from Ashland avenue to Western avenue. Each ordinance was accompanied with a recommendation of the board and an estimate by the city engineer of the cost of that part of the improvement provided for in such ordinance. The estimate of the cost of the first section, from State street to Stewart avenue, was $36,000. The estimate on the next section was $98,500, and on the last $72,000, making the estimated cost of the whole improvement $206,500. At the regular meeting of the city council on April 29, 1901,—the same day that the ordinances, recommendations and estimates were sent to the council,—the three ordinances were passed, and neither of them was referred to a committee of the city council or published. A petition of the city was filed in this case for a special assessment to pay the cost of the improvement from Ashland avenue to Western avenue. Appellants appeared and proved the facts as to the division of the improvement and the passage of the three ordinances, and objected that the

statute was not complied with in their passage. The objection was overruled and there was a trial of the question of benefits, resulting in a verdict sustaining the assessment, and it was confirmed.

The statute provides that all ordinances for local improvements shall originate with the board of local improvements, and if an improvement is deemed desirable the board shall adopt a resolution therefor and prepare and submit to the council an ordinance for the same, with a recommendation and an estimate of the cost of the improvement. Section 11 of the act provides that if the estimate of cost shall exceed the sum of $100,000, the ordinance shall be referred to the proper committee and published in the proceedings of the council or board of trustees in the usual way, in full, with the recommendations and estimates, at least one week before any action shall be taken thereon by the council. (Hurd's Stat. 1899, par. 517, p. 364.) The three ordinances passed April 29, 1901, were each for a different section of an improvement of the same kind and character throughout its entire length, and the estimated cost of the improvement exceeded $100,000. Even where different streets are to be paved, if they are similarly situated with respect to the improvement and are to be paved with like material and in the same way, the paving of each is but a part of one common enterprise and the whole constitutes a single improvement. (*City of Springfield* v. *Green*, 120 Ill. 269.) And where two ordinances are passed which are dependent upon each other as providing for parts of a single or entire scheme, they are to be treated as one ordinance and as providing for a single improvement. (*Ligare* v. *City of Chicago*, 139 Ill. 46.) In this case the entire improvement contemplated was in a single street, of the same material and character throughout, and it cannot be doubted that the ordinances were mutually dependent. They were recommended and passed as parts of the same scheme. It is not probable that the two ends

of the improvement would have been provided for with the center section left out, or that, if the section next to State street were omitted, either of the others would be authorized or constructed. The board and council had only one continuous improvement under consideration, and it came within the terms of the statute.

The court, on its own motion, called as a witness a member of the board of local improvements and examined him, against the objection of the defendants. The witness made a statement, in the nature of argument, that it was often desirable to make a division of a single improvement into several sections, and his testimony showed that there was no ulterior or improper motive on the part of the board in making the division in this case, and that, so far as he knew, the different ordinances merely happened to get to the council at the same time. The evidence was incompetent, and the court erred in calling and examining the witness. The opinion of a member of the board as to the wisdom of the statute or the desirability of complying with it could not affect the question under consideration one way or the other. It is within the power of the legislature to prescribe rules and conditions for the enactment of ordinances and making local improvements, and the city council are bound to comply with them. The legislature provided for notice and a hearing before the board of local improvements as to every contemplated improvement to be paid for by special assessment, and also provided that if the estimated cost should exceed $100,000 there should be additional time and notice before the passage of the ordinance by the city council. In such a case there is to be a reference to a committee, a publication of the ordinance in full and no action by the council for at least one week. These provisions are designed for the protection of property owners, and if they could be disregarded in this case they can in every case. All that would be necessary would be to divide an improvement into sections costing less

than $100,000 each, and the provision of the statute would
be nullified. The absence of improper motives would not
justify the violation of the statute. There was some
evidence that there was more traffic on the section near-
est State street than on the others, and this evidence
is pointed to as a reason for dividing the improvement.
That fact might very properly influence the council to
make a different improvement on that section so as to
withstand the wear and tear of the greater traffic, but no
difference of that kind was made. Besides, the objection
is not that three ordinances were passed providing for
different parts of the improvement, but that, being for
the same improvement, they came within the provision
requiring reference to a committee, publication and con-
sideration before their passage. If it was desirable to
make the provision for the improvement by three ordi-
nances, that fact would not obviate the necessity of com-
plying with the statute in the same manner as though
the improvement had been provided for by but one or-
dinance.

The estimate and assessment included the cost of
making and collecting the assessment, amounting to
$4075.57, and the assessment was confirmed, including
that item. Section 94 of the act concerning local improve-
ments provides that these costs and expenses shall be
paid by the city out of its general fund. (Hurd's Stat.
1899, par. 600, p. 382.) It is conceded that the assessment
was illegal as to that item, but it is contended that the
judgment was not erroneous because counsel for the city
stipulated on the hearing that the cost should be after-
ward deducted. No order of the court on the subject was
made, and the stipulation that the deduction should be
made afterward appears only in the bill of exceptions.
The court was not authorized to confirm an unlawful spe-
cial assessment upon the mere statement of counsel, on
the hearing, that it should be deducted from the judg-
ment. Nothing was entered of record which could bind

the city, and the property owner would be left to enforce the agreement if he could.    It is said that under section 84 of the amendatory act of 1901 (Laws of 1901, p. 114,) no more can be certified for collection than the cost of the improvement, and that the objection is thereby obviated.    That fact does not relieve the judgment of illegality, for the reason that the roll fixes an excessive and illegal limit, up to which it may be certified for collection, and if the improvement should cost the whole amount of the assessment the whole would be collected.

The city introduced witnesses who gave opinions to show that the property was benefited to the amount of the assessment.    These opinions were based upon examination by going along the street and looking at the property.    On cross-examination they were interrogated as to their relations to the city as witnesses in special assessment cases.    Counsel for the city thereupon admitted that they were employed by the city to go out and examine property in special assessment cases, and to examine the conditions surrounding property and give their opinions as witnesses in court, and that they were paid for the opinions and the time employed, and that they would be paid for services in this suit.    The defendants objected to counsel being allowed to make the admission, and now urge that it was error, because it cut off further examination and broke the force of their cross-examination of witnesses.    We see no objection to allowing the city to concede the facts which counsel were attempting to prove.    We are of the opinion, however, that the court unduly limited the further cross-examination of the witnesses.    One witness said that he had testified for the city in these cases for a little over four years and it had taken up one-fourth of his time; that he was in the real estate business and devoted the rest of his time to that business, and that he had sold over $100,000 worth of property the last year in the city of Chicago.    He was asked to name one place where he had sold property,

and the court sustained an objection to the question. Each witness was asked how much he received for his services as a witness or how much he had received for such service in the last year, and objections were sustained to the questions. The witnesses testified to nothing but opinions, and the jury were not bound to take the opinion of any witness as true, but were bound to receive and consider it in connection with every other fact and circumstance before them in arriving at their conclusion. (*Keithsburg and Eastern Railroad Co.* v. *Henry*, 79 Ill. 290; 8 Ency. of Pl. & Pr. 776.) The weight to be accorded to the opinions of these witnesses would depend not only on their means of information and knowledge, but also on their bias or inclination and relations to the parties, and while the cross-examination of witnesses is largely within the discretion of the court, it is always competent to show the interest of a witness and anything which would affect his credit or the value of his opinion. It is proper to show, on cross-examination, that a witness is in the employ of one of the parties or under obligations to the party calling upon him to testify. It would manifestly be important in determining the credit to be given to these witnesses and the value of their opinions, to know whether they were receiving only fair and ordinary compensation for their time, or whether the employment was of such a character and the compensation such as to make it desirable that the employment should continue and that the city should be fully satisfied with the opinions given. Undoubtedly, it was necessary for the city to employ the witnesses, but we think the defendants were entitled to have the jury know what the arrangement was under which the opinions were formed and testified to.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*