(No. 25220.—

THE CITY OF CHICAGO *et al.* Appellees, *vs.* THE WACKER-WABASH CORPORATION, Appellant.

*Opinion filed December 12, 1939—Rehearing denied Feb. 7, 1940.*

Urion, Bishop & Sladkey, (Howard F. Bishop, Daniel S. Wentworth, and Roland J. Klingler, of counsel,) for appellant.

Barnet Hodes, Corporation Counsel, (Alexander J. Resa, and L. Louis Karton, of counsel,) for appellee the City of Chicago; Joseph J. Sullivan, and C. Helmer Johnson, (Rathje, Hinckley, Barnard & Kulp, of counsel,) for other appellees.

Mr. Justice Shaw delivered the opinion of the court:

This is an appeal from an order of the county court of Cook county approving a certificate of final completion of what is known as the east and west South Water street improvement (generally known as Wacker Drive) in the city of Chicago. The court found that the improvement had been completed in substantial conformity with the requirements of the original ordinance; that there was $1,120,578.12 to be credited to the assessees, that all objections should be overruled and the certificate of completion approved. This certificate was filed pursuant to section 84 of the Local Improvements act (Ill. Rev. Stat. 1939, chap. 24, par. 790) which is as follows: "Except as otherwise provided in section 84a, within thirty (30) days after

the final completion and acceptance of the work, as herein-before provided, the board of local improvements shall cause the costs thereof, including the cost of engineering services, to be certified in writing to the court in which said assessment was confirmed. * * * At the time and place fixed by such notice, or at anytime thereafter, the court shall proceed to hear said application and any objections which may be filed thereto within the time fixed in such order, and upon such hearing the said certificate of the board of local improvements shall be *prima facie* evidence that the matters and things stated are true, but if any part thereof are controverted by objections duly filed upon such petition, the court shall hear and determine the same in a summary manner and shall enter an order according to the facts. Such order of the court shall be conclusive upon all the parties and no appeal therefrom, or writ of error thereto, shall be allowed to review or reverse the same," etc.

A motion to dismiss this appeal was made during our October term and taken with the case. It is contended by the city, and by some of the assessees who wish the certificate of final completion to stand as ordered, that the judgment is not appealable, and briefs have been filed on both sides of this question. This motion requires our first consideration, but in order to state any conclusion with reference to it a short history of the entire Wacker Drive project is necessary.

A plan commission was established in the city of Chicago pursuant to the statute (Ill. Rev. Stat. 1939, chap. 24, par. 71 *et seq.*) and appears to have made comprehensive recommendations to the city council on various subjects, among them being a broad scheme for relieving surface streets in the so-called "Loop" district in Chicago from heavy traffic flowing south on Michigan avenue across the Chicago river in a southwesterly direction toward the east and west crossings of the Chicago river on Lake, Randolph, Washington and Madison streets. The plan, in general, re-

quired the widening of east and west South Water streets and River street, involving the condemnation of much property, the improvement of and various changes in grade of intersecting north and south streets, and, among other things, the opening of a new street to be known as Holden Court. The Wacker Drive improvement, itself, required the construction of a double-deck four-lane roadway, which, in general, followed the south bank of the Chicago river from the Michigan avenue bridge to West Lake street, with appropriate and convenient ramps to the lower level, and a continuation thereof to Madison street at ground level.

This entire plan was never adopted by a single ordinance, but, pursuant to its general scheme, the board of local improvements recommended various parts of it for enactment by several different ordinances. It was evidently the idea that Garland Court, Wabash avenue, Holden Court (if and when opened and improved) North State street, North Dearborn street, Federal street, North Clark street, North LaSalle street, North Wells street and Fork avenue should serve as feeder streets, giving convenient means of ingress and egress at what were judged to be appropriate locations, whereby north and south traffic from these different loop streets might gain access to the upper and lower levels of Wacker Drive. On December 15, 1919, the city council passed an ordinance for the widening of South Water street, and on January 25, 1922, passed one for the widening of Market street. These were prior to the recommendations of the plan commission, which on June 7, 1922, made certain recommendations concerning new connections between Lake street and the lower level of South Water street, and for a six-lane roadway in connection therewith. On June 21, 1922, the city council passed an ordinance providing for the condemnation of property for the opening of the proposed street to be known as Holden Court, another ordinance for the condemnation of property in connection with Fork avenue, another one concerning condem-

nation of property for Garland Court and another one requiring the elevated railroad company to rearrange its structures within the lines of the proposed Holden Court. On the same day, it also passed the South Water street construction ordinance. The condemnation suit of the city for the purpose of securing property to open Holden Court was dismissed on October 27, 1933, and that project has been abandoned.

The broad scheme, above outlined, was divided into convenient parts for separate execution and separate special assessment proceedings. The main improvement is the one now under consideration and the county court has found it to be substantially completed. Other special assessment proceedings provided for the improvement of the feeder streets above described. Three of them provided for the opening and improving of Fork Avenue, Holden Court, and the widening and improving of Garland Court. This part of the general project has been abandoned so far as Holden Court is concerned. The map in the record indicates that Fork avenue was to be a feeder from Lake street between Wells street and Franklin street near the west end of Wacker Drive, and that Holden Court was likewise to be a feeder from Lake street, between Wabash avenue and State street near the easterly end of Wacker Drive. The general drawing of the entire project shows all of the property between the Chicago river and Lake street, and shows Fork avenue and Holden Court in the locations above indicated, but the ends of these two streets are closed by a continuous black line the whole length of each block, and not shown open as are the existing streets. It is the main contention of the appellant that notwithstanding the Holden Court improvement was proposed by and provided for in separate and distinct special assessment and condemnation proceedings, it is nevertheless such an integral part of the South Water street improvement that the latter cannot be certified as substantially completed without the opening and improvement

of Holden Court. This presents a question of law from which an appeal may be taken under section 95 of the Local Improvement act. (Ill. Rev. Stat. 1939, chap. 24, par. 804.) The motion to dismiss the appeal will be denied. *City of Belvidere* v. *Iles,* 330 Ill. 31.

A great deal of appellant's brief is devoted to the question of whether Wacker Drive has been completed in substantial conformity to the ordinance. Three deficiencies are pointed out which is claimed are substantial: (1) That a hand-rail in front of what would have been Holden Court would require $2750 to complete; (2) that a fan-house and some fans which would cost about $35,000, had not been installed to complete a ventilating system shown on the plans, and (3), that certain paving on Wells street, which will eventually cost about $11,000 is not completed and cannot be until certain changes in the elevated structure are made at that place. On these three points the trial court found that the project had been operating for about twelve years without any ventilating system, that experience had proved the fans to be unnecessary, and that neither their absence nor that of the other two items mentioned above, were a sufficient reason for denying a certificate of final completion on an eight-million-dollar project. These were findings of fact within the jurisdiction of the county court and under the provision of section 84 of the Local Improvement act, above quoted, are not open to our review.

We come then to appellant's main contention that Holden Court was such an integral and necessary part of the South Water street improvement scheme as to render it incomplete without the opening and improving of that short feeder street. On this proposition appellant relies on *Kerfoot* v. *City of Chicago,* 195 Ill. 229, *City of Springfield* v. *Green,* 120 id. 269, and *Ligare* v. *City of Chicago,* 139 id. 46.

The earliest case cited is that of *City of Springfield* v. *Green, supra,* and it has no bearing upon the present controversy. In that case there was but one ordinance which

covered various streets, and the principal question considered by the court was whether the constitution permitted a special assessment to be levied in accordance with the frontage of the various lots. In *Ligare* v. *City of Chicago, supra,* two ordinances were passed on the same day, providing for the widening of a certain street. The one last passed expressly referred to the preceding ordinance and was, by its very terms, dependent on the preceding one, and the two ordinances were construed by this court as though they were one. In the case we are considering, except for the general plan of the city plan commission, there is no connection between the Holden Court and South Water street ordinances, each being a separate and distinct local improvement, neither being dependent on the other to any greater extent than each of two intersecting streets is always dependent on the other.

In *Kerfoot* v. *City of Chicago, supra,* there was an attempt to evade section 11 of the then Local Improvement act. (Hurd's Stat. 1899, chap. 24, par. 517.) That statute provided that if the estimated cost of a local improvement should exceed the sum of $100,000 the ordinance should be referred to committee and published in the proceedings of the council, in full, with recommendations and estimates, at least one week before any action should be taken thereon. The board of local improvements of the city of Chicago adopted a scheme for the improvement of Archer avenue, which required a total estimated cost of $206,500. The entire improvement involved a continuous portion of the street in question from State street to Western avenue, and was to be constructed of the same materials and in the same manner throughout its length. The board of local improvements, for the purpose of evading the statute, arbitrarily divided this length of street into three sections and submitted three ordinances which were identical except as to termini, one covering the improvement from State street to Stewart avenue, the next continuing it to Ashland avenue

and the third providing for its construction from Ashland avenue to Western avenue. The cost of the section from State street to Stewart avenue was estimated at $36,000, the next section at $98,500, and the third at $72,000. The foregoing facts were proved on objection to a petition for confirmation of a special assessment and this court held that the assessment was void because of the clear evasion of statutory provisions. We pointed out that there was but an entire improvement of a single street of the same materials and construction throughout and, referring to the statute, said: "These provisions are designed for the protection of propery owners, and if they could be disregarded in this case they can in every case. All that would be necessary would be to divide an improvement into sections costing less than $100,000 each, and the provision of the statute would be nullified." The distinction between this case and the one we are now considering is so clear as to require no discussion, further than the consideration we gave it in the later case of *Ton* v. *City of Chicago*, 216 Ill. 331.

In the *Ton case, supra,* three ordinances were recommended by the board of local improvements for the paving of certain streets involving a total estimated cost of $157,500, the first of which was passed on February 11, 1901, the second, June 24, 1901, and the third, October 5, 1903. This last ordinance was repealed December 11, 1903, and a revision thereof again passed on June 27, 1904, and included an additional street. The same question was raised as in the *Kerfoot case, supra,* it being contended that the whole constituted one system costing in excess of $100,000. The first of these ordinances provided for the paving of One Hundred Thirteenth and One Hundred Fifteenth streets, Indiana avenue and Wentworth avenue. The second for the streets between One Hundred Eleventh and One Hundred Thirteenth and Michigan avenue and Stewart avenue. The third covered One Hundred Seventh street on the north, and One Hundred Eleventh street on the south, between

Indiana avenue and Michigan avenue. In that opinion the distinction is pointed out between it and the cases hereinabove discussed and, citing many cases, we adhered to the uniform rule that the city council is clothed with power to determine what local improvement is required, its nature and character, when it shall be made and the manner of its construction. These are matters confided to the discretion of the city council, and that discretion, when honestly and reasonably exercised, cannot be reviewed by the courts.

Appellant complains of the refusal of the trial court to permit certain inquiries concerning the issue of ten million dollars worth of bonds by the city of Chicago to be used by it in connection with the various improvements now under consideration. No objection covered this point and the question was not raised in the trial court until five weeks after the case had been closed and on the day before the date set for a final disposition of the cause. It was apparently an afterthought in the nature of a fishing expedition, and, in any event, we fail to see the materiality of the point involved. It is also urged that the final certificate of the board of local improvements was void because it was signed by its secretary. This question was not raised in the trial court where the defect, if any, could readily have been cured, and it cannot be urged in this court. The appellant also attacks the constitutionality of section 84 of the Local Improvement act, above quoted, but we have so often decided to the contrary that the question is no longer open. *Material Service Co.* v. *Village of Elmwood Park,* 355 Ill. 558.

We find no error in the judgment of the county court, so far as it is open for consideration in this review, and it is affirmed. *Judgment affirmed.*